187 N.J. Super. 524 (1983)
455 A.2d 541
EUGENE J. STANO, PLAINTIFF-RESPONDENT,
v.
SOLDO CONSTRUCTION COMPANY, A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT, AND BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF WARREN AND ESTIMATE DESIGN SERVICE, INC., A NEW JERSEY CORPORATION, DEFENDANTS. KEN-RAD CONSTRUCTION CO., INC., PLAINTIFF-RESPONDENT,
v.
BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF WARREN, DEFENDANT, AND NPS CONTRACTORS, INC., A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT. RAYMOND PETERS, PLAINTIFF-RESPONDENT,
v.
BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF WARREN, DEFENDANT, AND NPS CONSTRUCTORS, INC., A NEW JERSEY CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 21, 1982.
Decided January 12, 1983.
*528 Before Judges MATTHEWS, ANTELL and FRANCIS.
Richard R. Bonamo argued the cause for appellant Soldo Construction Company (Wilentz, Goldman & Spitzer, attorneys; Richard R. Bonamo and Philip A. Pahigian, on the briefs).
Edward J. Frisch argued the cause for appellant NPS Constructors, Inc. (Lindabury, McCormick & Estabrook, attorneys; Edward J. Frisch and Craig N. Greenawalt on the briefs).
Craig N. Greenawalt argued the cause for appellant NPS Constructors, Inc. (Lindabury, McCormick & Estabrook, attorneys; Craig N. Greenawalt and Edward J. Frisch on the briefs).
Richard R. Bonamo argued the cause for respondent Raymond Peters (Wilentz, Goldman & Spitzer, attorneys; Richard R. Bonamo and Philip A. Pahigian on the briefs).
Robert E. Wade, Warren County Counsel, argued the cause for defendant Board of Chosen Freeholders of the County of Warren.
*529 Stokes & Throckmorton, attorneys for respondent Ken-Rad Construction Co., Inc. (Edward C. Stokes, II on the brief).
The opinion of the court was delivered by MATTHEWS, P.J.A.D.
The public contract involved in these consolidated appeals was originally awarded to appellant Soldo Construction Company. Plaintiff Stano, a principal for a subcontractor of the second highest bidder, challenged this award. The award was reversed because Soldo failed to provide a list of qualified subcontractors, as required by N.J.S.A. 40A:11-16.
The contract was re-awarded to defendant NPS Constructors, Inc., which is the appellant in the second appeal, contingent upon clarification of its shareholder statement and the provision of material regarding the qualifications of its shareholders. That award was later reversed because NPS did not provide a proper proposition of surety for one of its subcontractors, as required by N.J.S.A. 40A:11-16.

I

Eugene J. Stano v. Soldo Construction Company and Board of Chosen Freeholders, of the County of Warren and Estimate Design Service, Inc. (A-5910-81-T1)
On June 29, 1982 defendant county invited lump sum bids for the construction of additions and alterations to the Warren Haven Health Care Center, pursuant to N.J.S.A. 40A:11-16. The contract was awarded to defendant Soldo Construction Company as the lowest bidder on July 21, 1982. Soldo set forth in its bid the names of its subcontractors, and named Estimate Design Service, Inc. as its subcontractor for the electrical, plumbing and heating work for the projects.
Although Estimate Design is prequalified with the Department of Building and Construction of the State of New Jersey as an electrical contractor, it is not prequalified as a contractor *530 for plumbing or heating work. Neither Estimate Design nor its principals are licensed as plumbers by the State or by any New Jersey municipality.
Plaintiff challenged Soldo's bid based upon his contention that, since Estimate Design was not a qualified subcontractor, whose names are required to be set forth by N.J.S.A. 40A:11-16, Soldo was not a "responsible bidder" within the meaning of that statute. Defendant Estimate Design did not bring forth any evidence of its experience or qualifications with regard to plumbing or heating work. Although the trial judge states that he did not intend to imply that possession of a license was the criterion by which to judge the qualifications of a subcontractor, since there was nothing before the court to suggest the qualifications of Estimate Design, Soldo was adjudged to have failed to comply with N.J.S.A. 40A:11-16. The judge further stated that a listing of qualified subcontractors was a material-type requirement that could not be waived. He granted what was essentially summary judgment on the affidavits, since he found no factual dispute. He thus held that compliance with N.J.S.A. 40A:11-16 requires that there be a factual basis upon which a county can determine that subcontractors are qualified, which was not provided here.
On August 10, 1982, the judge set aside the award of the Warren Haven Health Care Center contract to Soldo as being in violation of N.J.S.A. 40A:11-16. On August 11, 1982 defendant freeholders reawarded the contract to defendant NPS Constructors, Inc., which was the second lowest bidder.

II

Ken-Rad Construction Co., Inc. v. Board of Chosen Freeholders of the County of Warren and NPS Constructors, Inc.

Raymond Peters v. Board of Chosen Freeholders of the County of Warren and NPS Constructors, Inc. (A-449-82-T1)
These two cases were consolidated and heard on September 13, 1982. The first impropriety which respondents alleged concerned *531 the proposition of security submitted by NPS for one of its proposed subcontractors, Washington Mechanical. The proposition of surety submitted with its bid was a photocopy of an original proposition of surety and accompanying power of attorney submitted by another bidder, Kaslow & Jeffrey. The proposal of surety guaranteed that Reliance Insurance Company would furnish a bond in an amount at least equal to Washington Mechanical's subcontract for performance of the HVAC[1] work on the Warren Haven project. A photocopy of the proposal of surety was included in the NPS bid; the original and the power of attorney were included in the bid of Kaslow & Jeffrey. The proposal of surety did not name any particular general contractor, but the trial judge found that because the proposition of surety referred to the price and terms and conditions of the subcontract, it was referable to a single contract.
Plaintiffs Peters and Ken-Rad also alleged that the bid by NPS was defective under N.J.S.A. 52:25-24.2 because NPS failed to supply a proper statement listing the names and addresses of the individual stockholders or partners having an interest in the bidder of 10% or more. At the request of the county for "clarification" of the shareholder statement, a letter was submitted by NPS on August 19, 1982, which stated that 100% of the stock was held by an entity called "Nuclear Power Services, Inc./NPS Corp.," and that Colin Halpern owned 70% of the stock of that corporation. The trial judge ruled that such was a proper shareholder disclosure statement. The ambiguity in the shareholder's statement, he found, was a defect caused by a confusing set of facts and could be waived if corrected by a later clarification.
The judge also ruled that NPS had named qualified subcontractors in its bid in compliance with N.J.S.A. 40A:11-16.
The trial judge concluded that the photocopy of the performance guarantee submitted by Kaslow & Jeffrey was not sufficient *532 assurance to the county that a similar guarantee would be submitted with respect to a contract with Washington Mechanical and NPS. This problem was aggravated by the lack of the power of attorney, although the judge hinted that this latter requirement could be waived if the proposition of surety were an original. The judge also held that this requirement, found in the bidding requirements as well as the statute, could not be waived by the county or cured after the opening of bids. He refused to re-award the contract to Ken-Rad, but stated that that was a decision to be left to the discretion of the freeholders.

I
Soldo, in its appeal, contends that it was improper under N.J.S.A. 40A:11-16 to inquire whether it had named "qualified" subcontractors, the only proper question being whether Soldo was a responsible bidder. The section of this statute to which Soldo refers, states:
There will be set forth in the bid the name or names of, and evidence of performance security from, all subcontractors to whom the bidder will subcontract the furnishing of plumbing and gas fitting, and all kindred work, and of the steam and hot water heating and ventilating apparatus, steam power plants and kindred work, and electrical work, structural steel and ornamental iron work, each of which subcontractors shall be qualified in accordance with this act.
Under Soldo's reading, the requirement that the subcontractors named in the bid be "qualified in accordance with this act" would have meaning only in relation to N.J.S.A. 40A:11-25, which gives governing bodies authority to establish regulations "appropriate for controlling the qualifications of prospective bidders...." Thus, the requirement that subcontractors be "qualified" would be meaningless in the present case, since the County of Warren had not adopted any regulations regarding subcontractors.
We do not accept this interpretation of the language of the statute. We find the reading of the trial judge to be more consistent with the spirit in which prior cases have dealt with public contracts law.
*533 First, N.J.S.A. 40A:11-25 gives the governing bodies of contracting units the power to establish qualifications for bidders; no mention is made of subcontractors. This seriously undermines the theory that the requirement of N.J.S.A. 40A:11-16 that listed subcontractors be qualified under the act refers directly to N.J.S.A. 40A:11-25.
The requirement that "qualified" subcontractors be listed is not necessarily dependent upon the adoption of regulations. The bidding statutes are to be interpreted with reference to the public good, their purpose being "to guard against favoritism, improvidence, extravagance and corruption; their aim is to secure for the public the benefits of unfettered competition." Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth., 67 N.J. 403, 410 (1975).
For example, in Pucillo v. New Milford, 73 N.J. 349, 359 (1977), an award of a contract was set aside where the bidder had given an estimate for a three-year contract although a five-year estimate as well as a three-year estimate was called for by the bidding specifications. The court reasoned that such a deviation from the bid specifications gave defendant "a palpable economic benefit which gave him an advantage over his competitors and undermined the necessary common standard of competition." Id. at 358. Although it was not certain that had the other bidders been operating on the same standard their bids would have been lower, the possibility that more equal adherence to the bidding requirements might have yielded an economic benefit to the public is enough to undermine the required "common standard of competition." Id. Thus, the requirement could not be waived as to one bidder without placing the other bidders on equal footing.
Although this case is not directly on point, we refer to it to illustrate the policy of the court to place bidders on an equal footing for the benefit of the public. See, also, Hillside Tp. v. Sternin, 25 N.J. 317, 327 (1957). We therefore conclude that the most reasonable interpretation of N.J.S.A. 40A:11-16 would *534 require giving the term "qualified" subcontractor some content. The lack of standards may create problems; however, the alternative is that the term would be meaningless.
Soldo urges that the procedure which it followed does not undermine the integrity of competitive bidding practices and is in fact beneficial since, if evidence of qualification had to be submitted with the bid instead of being established at post-award procedures, the contractor would be stuck with the subcontractors named in his bid.
The problem lies in the Local Public Contracts Law[2] itself in requiring the contractor to demonstrate the qualifications of its subcontractors. While we believe that Soldo may be correct in arguing that the trial judge's interpretation could lead to the invalidation of bids where a proposed subcontractor named in the bidding papers becomes unavailable for some reason after the award,[3] the alternative possibility we find fraught with even more difficulty. Under Soldo's interpretation the contractor could name any company it chose as a proposed subcontractor and then after the award haggle with the governmental contracting unit over which subcontractors are acceptable substitutes.
The best approach to a determination of what was intended by the requirement that the listed subcontractors be qualified appears to us to be one similar to that which the courts have used to determine whether a bidder is responsible under the same statute. In order to reject a low bid on a finding of irresponsibility, "there must be evidence of such character concerning the irresponsibility of the bidder as would cause fairminded and reasonable men to believe it was not in the best interest of the municipality to award the contract to the lowest bidder." Arthur Venneri Co. v. Paterson Housing Auth., 29 N.J. *535 392, 402 (1959), cited in Stamato & Co., Inc. v. Vernon Tp., 131 N.J. Super. 151, 156 (App.Div. 1974). A determination that a bidder is irresponsible must be a bona fide judgment based upon facts tending to support the determination. Stamato at 156. Thus, a determination by a governing body not to award a contract to a bidder because of irresponsibility will be reviewed on an abuse of discretion standard. See Stamato at 157. The same determination made by a trial judge should be reviewed by us on the same standard.
The evidence introduced that the subcontractor, Estimate Design, was not prequalified as a plumbing or heating contractor, was not' licensed to do such work, and the lack of evidence that it had ever done such work, we find to have been sufficient to cause a fairminded and reasonable person to believe that it was not in the best interest of the municipality to award the contract to a bidder employing such a subcontractor.
Finally, we do not believe that appellant's argument that N.J.S.A. 40A:11-16 does not prohibit substitution of contractors or the use of sub-subcontractors has merit. If that were the case, there would be no point in having the subcontractors listed at all. The purpose of bidding statutes is to secure the benefits of competition for the public, and they are to be strictly construed to achieve this end, Terminal Const. Corp. v. Atlantic Cty. Sewerage Auth., supra, 67 N.J. at 410. If a bidder were able to substitute unlisted subcontractors, he could wait until after being awarded the bid and negotiate for a lower price, the savings from which would accrue to him and not to the public. Thus, a strict interpretation of "all subcontractors to whom the bidder will subcontract" as those subcontractors whom the bidder will actually use is consistent with the manner in which the act has been interpreted.

II
NPS contends in its appeal that the trial judge was incorrect in determining that its bid was defective because it provided a *536 Xerox copy of a proposal of surety, the original of which had been filed with the bid of a competing bidder. The judge found that appellant failed to supply "evidence of performance security" as required by N.J.S.A. 40A:11-16 and a similar requirement contained in the bidding specifications. NPS contends that this was not a material deviation from the statute or the specifications, since there was no prejudice to the public or to any other bidder, and that any defect therefore could have been waived.
A requirement under the Local Public Contracts Law is material and cannot be overlooked when frustration of the policies underlying the bidding statutes is possible, that is, when it is possible that corruption or favoritism will result, Pucillo v. New Milford, supra, 73 N.J. at 357, citing Terminal Constr. Corp. v. Atlantic Cty. Sewerage Auth., supra, 67 N.J. at 412. "Minor or inconsequential variances and technical omissions may be the subject of waiver." Hillside Tp. v. Sternin, supra, 25 N.J. at 324. Material departures prevent the formation of a valid contract, and "[s]ubstantial noncompliance cannot be waived." Id.
Reliance Insurance Company prepared the original of the proposition of surety in question on a form provided by the county. In so doing Reliance promised to
... furnish a bond in the sum of not less than the Subcontract price for the faithful performance on the part of the said Subcontractor [Washington Mechanical] of the terms and conditions of the Subcontract and for the payment of all lawful claims applicable to the performance of the said subcontract work.
Reliance thereby bound itself to supply a performance guarantee for all HVAC, plumbing or fire protection work, the subcontract work covered by the proposition of surety, that Washington Mechanical might perform on the Warren Haven project. The surety intended to inform the county, Washington Mechanical and any interested bidder that it agreed to bond all such work. The surety's promise was not directed to a particular bidder or to a particular subcontract. The proposition names no bidder and thus is not limited to a contract between Washington Mechanical and a single bidder. Instead, the surety's *537 promise addressed a range of subcontract work to be performed by Washington Mechanical. A surety company's sole concern when bonding a subcontractor is with the reliability and financial solvency of that subcontractor; it is irrelevant to the surety who receives its performance guarantee. Peters' suggestion that a surety company might wish to avoid issuing a performance bond covering Washington Mechanical if the surety had suffered prior unfavorable experiences with NPS is meaningless. Only if Washington Mechanical defaulted on its subcontract obligations could Reliance Insurance be called upon to fulfill its performance guarantee. Reliance was not offering to bond NPS.
Peters argues that Reliance Insurance had only agreed to "bond a particular subcontract," one between Washington Mechanical and Kaslow & Jeffrey. It premises this contention on the fact that Kaslow & Jeffrey named Washington Mechanical as a subcontractor for HVAC, plumbing and fire protection work, while NPS named Washington Mechanical as a subcontractor for only HVAC work. Since the photocopied proposition of surety submitted by NPS for Washington Mechanical mentioned HVAC, plumbing and fire protection work, Peters concludes that the surety's agreement to bond Washington Mechanical for such work was limited to a promise to bond that subcontractor should Kaslow & Jeffrey receive the award of the overall contract on the Warren Haven project, even though Kaslow & Jeffrey was not named in Reliance's proposition of surety.
The essential error in this position is that the proposition of surety at issue is simply not a promise to "bond a particular subcontract." It is instead an agreement to bond a particular subcontractor for a range of subcontract work he may perform. Reliance Insurance's promise to bond Washington Mechanical for the HVAC, plumbing and fire protection phases of the Warren Haven project defined the maximum exposure this surety would assume on behalf of that subcontractor. In being *538 prepared to bond Washington Mechanical for those three forms of work, Reliance was certainly prepared to bond the same subcontractor for lesser components of the same work, since such a bond would require less exposure on the part of the surety. In agreeing to bond Washington Mechanical for HVAC, plumbing and fire protection work on the Warren Haven job, Reliance had already agreed to bond the same subcontractor for the same HVAC work, should Washington Mechanical subcontract for only that phase of the project. This fact is evidenced by Reliance's willingness to provide at the request of the County an additional proposition of surety covering Washington Mechanical for just the HVAC work on this construction project.
We do not find that permitting this bid to stand would contravene the purposes of N.J.S.A. 40A:11-16. Since the original of the Xerox submitted by NPS was already before the freeholders, evidence of security was provided, and the form was a mere technicality. It is similar to other technical violations of bidding statutes or specifications which have been allowed to be waived. Cf. Hanover Tp. v. Inter. Fidelity Ins. Co., 122 N.J. Super. 544, 551 (App.Div. 1973) (minor variation in the amount of a bid bond submitted from the amount required); P. Michelotti & Sons, Inc. v. Fair Lawn, 56 N.J. Super. 199, 202-203 (App.Div. 1959), app. dism. 31 N.J. 556 (1960) (submission of an uncertified check as security for a bid where a certified check is required). The present nonconformity appears to fall in the same category.
Peters claims that the fact that the original statement listing shareholders owning more than 10% of its stock needed clarification creates a substantial deviation from the bidding statute. N.J.S.A. 52:25-24.2 requires such a statement:
No corporation or partnership shall be awarded any contract ... the cost of which is to be paid with or out of any public funds, by the State, or any county, municipality ... unless prior to the receipt of the bid or accompanying the bid, of said corporation or said partnership, there is submitted a statement setting forth the names and addresses of all stockholders in the *539 corporation or partnership who own 10% or more of its stock, of any class or of all individual partners in the partnership who own a 10% or greater interest therein, as the case may be. If one or more such stockholder or partner is itself a corporation or partnership, the stockholders holding 10% or more of that corporation's stock, or the individual partners owning 10% or greater interest in that partnership, as the case may be, shall also be listed. The disclosure shall be continued until names and addresses of every noncorporate stockholder, and individual partner, exceeding the 10% ownership criteria established in this act, has been listed.
In George Harms Constr. Co. v. Lincoln Park, 161 N.J. Super. 367, 371-372 (Law Div. 1978), this statute was held to create a mandatory requirement. No waiver was allowed nor was the contractor given time to cure an invalid bid, id. at 373,. We read this case, however, to apply where there has been no submission of a proper statement at all. We find the present case to be distinguishable on the facts. The trial judge here found as a matter of fact, although noting that the issue was actually moot, that appellant had provided an accurate shareholders' statement, but due to the complexity of the facts it was unavoidably confusing. The later clarification was simply intended to aid the county in its interpretation of the statement and was permissible. Such a finding should only be overturned where there has been an abuse of discretion. Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474 (1974). The trial judge had the disclosure statements before him when he reached his conclusion that the information originally provided, although confusing, was proper. It was, therefore, based on substantial credible evidence in the record as a whole. See State v. Johnson, 42 N.J. 146, 164 (1964).
The claimed defect we find not to be substantial and therefore it could be waived. In fact, there was no failure to provide a shareholders' statement.
*540 For the foregoing reasons, the judgment in Stano v. Warren Cty. Freeholder Board, (A-5910-81-T1) is affirmed; the judgment in Ken-Rad Constr. Co., Inc. v. Cty. Freeholder Bd. (A-449-82-T1) is reversed.
NOTES
[1] Heating, ventilating and air conditioning.
[2] N.J.S.A. 40A:11-1 et seq.
[3] We do not decide this question here, nor do we suggest that invalidation of a contract would necessarily follow in all instances of such an occurrence.