850 A.2d 601

CLYDE N. LATTIMER & SON CONSTRUCTION COMPANY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF–APPELLANT, v. TOWNSHIP OF MONROE UTILITIES AUTHORITY, A BODY POLITIC OF THE STATE OF NEW JERSEY, DEFENDANT–RESPONDENT, AND MUNICIPAL MAINTENANCE COMPANY, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued June 1, 2004—Decided June 22, 2004.

Before Judges NEWMAN, PARRILLO and HOENS.

*William C. Levine* argued the cause for appellant (*Katz, Ettin & Levine,* attorneys; *Mr. Levine* on the brief).

*William C. Moran, Jr.* argued the cause for respondent (*Huff, Moran & Orron,* attorneys; *Mr. Moran* on the brief).

*Thomas S. Cosma* argued the cause amicus curiae Construction Industry Advancement Program of New Jersey (*Connell Foley,* attorneys; *Mr. Cosma,* of counsel and on the brief).

*Edward M. Callahan, Jr.* argued the cause amicus curiae National Contractors Association, Northern New Jersey Chapter, Inc. (*Clancy, Callahan & Smith,* attorneys; *Mr. Callahan,* of counsel and on the brief).

The opinion of the court was delivered by

NEWMAN, J.A.D.

Plaintiff Clyde N. Lattimer & Sons Construction Company appeals from the order dismissing its complaint challenging the award by defendant Township of Monroe Utilities Authority (MUA) of a municipal contract for repairs to a pump station to defendant Municipal Maintenance Company, Inc. (MMC), the lowest responsible bidder. Plaintiff contends that MMC's bid should have been rejected because MMC failed to obtain a pre-bid price quote from its named electrical subcontractor David Hamilton Electrical Contracting in violation of *N.J.S.A.* 40A:11–16 of the Local Public Contracts Law. Because neither the language of nor the legislative history to *N.J.S.A.* 40A:11–16 requires that a single named electrical work subcontractor submit a pre-bid price quote to the contractor, we are satisfied that the bid was properly awarded to MMC and affirm.

The relevant facts are not in dispute. Some time in summer 2003, MUA invited public bids for a repair project to a pump station owned by the Township. MMC submitted the low bid for the project in the amount of $972,000.00. Plaintiff was the second lowest bidder at $1,048,000.00. In a letter to the MUA dated August 12, 2003, plaintiff challenged MMC's bid, pointing out that MMC failed to obtain a price quote from its listed electrical subcontractor in violation of the Local Public Contracts Law, *N.J.S.A.* 40A:11–1 to –50. Instead, MMC estimated the cost for Hamilton to perform the electrical work. MMC and Hamilton have an extended history of working together, and maintain an

"arrangement" whereby MMC will use Hamilton for the electrical work on most of its projects.

On August 27, 2003, plaintiff filed a complaint in lieu of prerogative writs seeking to enjoin the award of the contract to MMC and declaring plaintiff as the lowest bidder. On September 11, 2003, the trial court issued an Order to Show Cause with Temporary Restraints. Following argument on September 30, 2003, the trial court issued an order on October 10, 2003 dissolving the temporary restraints, and dismissing both the Order to Show Cause and plaintiff's complaint with prejudice. The trial court reasoned that the requirement sought by plaintiff, that a named subcontractor had to provide a price quote to the contractor prior to bidding, was not expressed in *N.J.S.A.* 40A:11–16. From the MUA's perspective, it received the lowest price and was protected by the bidder's surety bond in the event there was a dispute between the bidder and subcontractor after the award of the contract. Plaintiff's effort to secure a stay of the trial court's order was unsuccessful both before the trial court and this court.

On appeal, plaintiff contends that awarding a contract to a contractor who did not receive a pre-bid price quote from a named subcontractor violates both the letter and spirit of *N.J.S.A.* 40A:11–16.

*N.J.S.A.* 40A:11–16, commonly referred to as the Anti–Bid Shopping Law, provides in relevant part:

> The contracting agent shall advertise for and receive, in the manner provided by law, either (a) separate bids for each of said branches of work, or (b) bids for all the work goods and services required to complete the building to be included in a single overall contract, or (c) both. In the case of a single bid under (b) or (c), there shall be set forth in the bid the name or names of all subcontractors to whom the bidder will subcontract the furnishing of . . electrical work . . . each of which subcontractors shall be qualified in accordance with P.L.1971, c. 198 (C.40A:11–1 et seq.).

From its enactment in 1971, *N.J.S.A.* 40A:11–16 required the names of subcontractors to be set forth in all bids. *Prismatic Dev. Corp. v. Somerset County Bd. of Chosen Freeholders,* 236 *N.J.Super.* 158, 163, 564 *A.2d* 1208 (App.Div.1989), *overruled on*

*other grounds by Meadowbrook Carting Co., Inc. v. Borough of Island Heights,* 138 *N.J.* 307, 320, 650 *A.*2d 748 (1994). In 1987, the Legislature passed Senate Bill No. 1029, which would have amended *N.J.S.A.* 40A:11–16 to permit bidders to submit the names of subcontractors after the opening of bids but prior to the award of the contract, as an alternative to requiring bidders to submit all subcontractor names at the time they submit their bids. *See* Governor's Reconsideration and Recommendation Statement to Senate Bill No. 1029 *L.* 1987, *c.* 48.

The bill was conditionally vetoed by then Governor Thomas Kean. In his Reconsideration and Recommendation Statement, Governor Kean had this to say:

> Current law requires that general contractors bidding on local public construction contracts set forth the name or names of all subcontractors at the time of bid submission. The statute contemplates subcontracts for the furnishing of plumbing and gas fitting, steam power plants, steam and hot water heating and ventilating apparatus, electrical work, and structural steel and ornamental iron work.
>
> I am not convinced that changing this system of bidding to permit subcontractors to be named at a later time would be in the public interest. If a general contractor could wait to name subcontractors until after he has submitted his bid to the local unit of government, then the local unit of government would be unlikely to benefit from any bid shopping undertaken by the general contractor in securing the performance of subcontractors. The purpose of public bidding is to secure performance of high quality for the lowest possible price, and I believe that this objective is furthered by retention of the current statutory scheme whereby subcontractors must be named by general contractors at the time their bids are submitted. This statutory scheme is consistent with statutes regulating public school construction contracts and State construction contracts.

The bill was later amended to conform with the Governor's recommendations and enacted into law. *Prismatic Dev. Corp., supra,* 236 *N.J.Super.* at 163–64, 564 *A.*2d 1208.

In 1998, the Legislature again amended *N.J.S.A.* 40A:11–16. The amendment was responsive to the earlier decision of this court in *Thomas P. Carney, Inc. v. City of Trenton,* 235 *N.J.Super.* 372, 562 *A.*2d 807 (App.Div.1988). There, Fitzpatrick, whose bid named multiple subcontractors for each trade specialty, submitted the lowest bid. *Id.* at 375, 562 *A.*2d 807. The plaintiff, Carney, who submitted the second lowest bid, listed a single contractor for each of the trades. *Ibid.* Carney argued that

Fitzpatrick was required under *N.J.S.A.* 40A:11–16 and *Stano v. Soldo Construction Co.,* 187 *N.J.Super.* 524, 455 *A.2d* 541 (App. Div.1983), to name only one subcontractor in each trade whom Fitzpatrick would actually use. *Id.* at 377, 455 *A.2d* 541. If Fitzpatrick were allowed to name numerous subcontractors, Carney asserted, Fitzpatrick could then go bid-shopping and require the subcontractors to compete against each other to secure the contract following the award of the bid to Fitzpatrick. *Ibid.*

We rejected Carney's contention, deciding that the language of *N.J.S.A.* 40A:11–16 did not preclude the naming of multiple subcontractors within each trade. *Id.* at 378–79, 455 *A.2d* 541. We commented:

> The "one subcontractor to a trade" rule contended by Carney is simply not found in the text of the statute. If the drafters of the statute intended to prohibit general contractors from using multiple subcontractors in each trade, we assume more precise wording would have been used. It seems obvious that the use of multiple subcontractors within a trade may have a beneficial effect in cutting contract costs which ultimately enures to the benefit of the taxpayers. . . . The statute does not prohibit a bidder from contracting with more than one subcontractor in a trade nor do we interpret it to require that each subcontractor named actually receive a contract. The statute simply required Fitzpatrick to name the subcontractors with whom he "will" contract. The purpose of the word "will" in the statute is to prevent substitutions of unlisted subcontractors, not to guarantee that each listed subcontractor receive a contract.
>
> Where, as in this case, the contracting authority requests bids for a base bid price plus alternates and reserves the right, subsequent to the award, to choose which alternates will be selected, the public interest may well be served by allowing the general contractor to obtain various prices from several subcontractors within a trade in order to obtain the best price considering all contingencies. The public bidding laws of this State were designed to obtain the best possible return for public money and are to be interpreted for the benefit of the public, not of bidders. . . .
>
> We agree . . . that the *Stano* case does not compel a different result. . . . Here [unlike *Stano* ] Fitzpatrick did not attempt to substitute any subcontractor for the subcontractors that were named in its bid and its list contained the names of the subcontractors actually used. . . . We did not suggest [in *Stano* ] either directly or obliquely that post award bid-shopping with listed subcontractors should be precluded.
>
> [*Id.* at 378–80, 455 *A.2d* 541].

In *Carney,* we further addressed the *amici's* concern that permitting the naming of multiple subcontractors in a trade

without awarding each of those subcontractors a contract would encourage post-bid award competition among the subcontractors without savings to the public, stating:

> If the Legislature perceives a need to either ban the use of multiple subcontractors within a given trade, or require that each subcontractor named receive a contract, or impose conditions on the use of such a bid, we are confident that it will enact the necessary legislation to amend the statute.
>
> [*Id.* at 380–81, 562 *A.*2d 807].

Later, however, this court in *Prismatic Dev. Corp., supra,* interpreted the *Carney* holding as limited to the narrow factual circumstances it presented. In fact, we stated:

> to the extent that [*Carney* ] may be understood as interpreting *N.J.S.A.* 40A:11–16 as permitting a prime contractor for a single overall contract to name multiple subcontractors for some (or all) of the branches of work and then select between them after the opening of bids, we respectfully demur.
>
> [236 *N.J.Super.* at 165, 564 *A.*2d 1208].

The Legislature clarified this issue by amending *N.J.S.A.* 40A:11–16 to explicitly permit contractors to submit bids naming multiple subcontractors in a given specialty and to award a contract to each named subcontractor.

> Whenever a bid sets forth more than one subcontractor for any of the specialty trade categories (1) through (4) specified hereinabove in this section, the bidder shall submit to the contracting unit a certificate signed by the bidder listing each subcontractor named in the bid for that category. The certificate shall set forth the scope of work, goods and services for which the subcontractor has submitted a price quote and which the bidder has agreed to award to each subcontractor should the bidder be awarded the contract.
>
> [*L.* 1997, c. 408].

In addition to authorizing the use of multiple subcontractors, the amendment required bidders to obtain price quotes from subcontractors in multiple-subcontractor situations and represent as much in the certificate.

 It is well settled that in construing a statute, courts must give effect to the legislative intent. *Prismatic Dev. Corp. supra,* 236 *N.J.Super.* at 163, 564 *A.*2d 1208. As previously noted, " '[p]ublic bidding statutes exist for the benefit of taxpayers, not bidders, and should be construed with sole reference to the public good.' " *Borough of Princeton v. Bd. of Chosen Freeholders,* 169

*N.J.* 135, 159–60, 777 *A.*2d 19 (2001) (quoting *Nat'l Waste Recycling, Inc. v. Middlesex County Improvement Auth.*, 150 *N.J.* 209, 220, 695 *A.*2d 1381 (1997)). The purpose of such statutes is "to secure the benefits of competition for the public, and they are to be strictly construed to achieve this end." *Stano, supra,* 187 *N.J.Super.* at 535, 455 *A.*2d 541.

In arguing that *N.J.S.A.* 40A:11–16 should be read to require pre-bid price quotes from named single subcontractors, plaintiff and *amici curiae* assert that MMC's actions in anticipating Hamilton's bid should not be permitted since, after acceptance of the bid, MMC could negotiate a lower price with Hamilton than it estimated in the bid and pocket the difference. This, the parties contend, hurts the public since they would be paying a higher price than necessary for the project. Plaintiff also argues that Hamilton could charge MMC an excessively high price for the electrical work, which according to plaintiff could make it "difficult or impossible for the contractor to complete the project on time, within budget and doing quality work." Plaintiff further claims that, since no price quote was obtained from Hamilton, Hamilton is not obligated to perform the work, which could leave MMC unable to finish the project on time.

Nowhere in the language of *N.J.S.A.* 40A:11–16 are bidders expressly required to obtain price quotes from their subcontractors prior to submitting their bids. The 1998 amendment to *N.J.S.A.* 40A:11–16 modified the contractor's obligation by adding the price quote requirement when multiple subcontractors are named in each trade. If the Legislature desired to require the contractor to obtain a pre-bid price quote where a single subcontractor is used in a trade, the Legislature could easily have said so.

Although plaintiff argues that completion of the project could stall if Hamilton charges MMC a price well beyond that envisioned by MMC for the electrical work, that risk is assumed by MMC who is obliged to use Hamilton for the job. MMC cannot substitute a subcontractor on a post-bid waiver from the Authority if

Hamilton insists on a price beyond MMC's estimate of the cost for the electrical work. *Stano v. Soldo Construction Co., supra,* made it clear that *N.J.S.A.* 40A:11–16 prohibits the substitution of unnamed subcontractors. 187 *N.J.Super.* at 535, 455 *A.2d* 541. The concern that the playing field is not level because MMC could substitute an unnamed subcontractor is simply unfounded.

Plaintiff's contention that taxpayers are not benefiting from the lowest possible price if MMC is able to negotiate a lower price with Hamilton than stated in its bid is unpersuasive. Even where a pre-bid price quote has been submitted, the successful contractor is not precluded from seeking to negotiate a lower price with the subcontractor. In any event, we perceive this risk to be slight at best. Since the named subcontractor must be used on the project under the "will contract" language of *N.J.S.A.* 40A:11–16, it would appear the subcontractor, rather than the bidder, enjoys the more favorable bargaining position in adhering to its price despite the fact that it might exceed the contractor's estimate. The fact remains that MMC, not plaintiff, submitted the lowest total bid on the project, approximately $76,000 less than plaintiff, which results, of course, in the lowest expenditure of taxpayer dollars.

Notwithstanding what we have said, we do not disagree with the proposition that a public works contractor should obtain a pre-bid price quote from a prospective subcontractor. We indicate only that our interpretation of the relevant legislation does not require that a pre-bid quote must be obtained from a single subcontractor. In fact, from what was represented to us at argument, contractors, by and large, invite subcontractors to submit pre-bid price quotes to decide which subcontractor offers the lowest price for the job. The benefits from such a practice to all concerned, including most significantly the public, are obvious. With a pre-bid price quote in place, the subcontractor can stand behind the quote and not be obliged to reduce its quoted price. By the same token, the subcontractor is bound to perform and an enforceable promissory estoppel can be asserted against the subcontractor if the subcon-

tractor declines to perform. *E.A. Coronis v. M. Gordon Constr. Co.,* 90 *N.J.Super.* 69, 77, 216 *A.*2d 246 (App.Div.1966). In the absence of a pre-bid price quote, there is no basis to invoke the doctrine of promissory estoppel if the named subcontractor refuses to enter into a contract to perform the work. And, despite our earlier assessment of the subcontractor's leverage where there has been no pre-bid price quote, we were advised by the *amici curiae* attorneys that the reality is just the opposite in the contracting industry. Most subcontractors, we were informed, deal with four or five general contractors and depend upon those contractors for their livelihood. Were a subcontractor not to accede to the contractor's demands or fail to act in a cooperative manner, the financial spigot for future work could easily be turned off. Thus, the appearance of leverage favoring the subcontractor does not comport with the reality of the workings of the construction industry.

We have digressed only to illuminate the concerns that may arise in the wake of this decision by what may have been an apparent oversight by the Legislature when it amended *N.J.S.A.* 40A:11–16 in 1998. This matter is deserving of the Legislature's attention since the public interest is so strongly implicated in the bidding arena where taxpayer dollars are at stake.

Affirmed.