116 A.3d 1091

DOBCO, INC., PLAINTIFF, v. BROCKWELL & CARRINGTON CONTRACTORS, INC., BENJAMIN R. HARVEY CO., INC., SAL ELECTRIC CO., INC., AND HUDSON COUNTY SCHOOLS OF TECHNOLOGY, DEFENDANTS.

Superior Court of New Jersey
Law Division Hudson County

Decided January 13, 2015.

150

*Christopher L. Weiss* and *Russell T. Brown* for plaintiff (*Ferro Labella & Zucker, LLC,* attorneys).

*Lee M. Tesser* and *Matthew Lakind* for defendants Brockwell & Carrington Contractors, Inc. and Sal Electric, Co., Inc. (*Tesser & Cohen,* attorneys).

*John R. Dineen* for defendant Hudson County Schools of Technology (*The Law Office of Netchert Dineen & Hillmann,* attorneys).

BARISO, A.J.S.C.

This application raises a novel question concerning the financial qualifications of bidders for governmental contracts. More specifically, prospective bidders for public work are required to be preclassified by the Division of Property Management and Construction (DPMC) in the Department of the Treasury in accordance with the provisions of *N.J.A.C.* 17:19–2.1 to –2.7. *See also N.J.S.A.* 18:18A–27. Each classified bidder's aggregate rating must then be calculated in accordance with the formula prescribed by *N.J.A.C.* 17:19–2.8. The aggregate rating, which is based on a variety of financial factors, including the bidder's working capital, bonding capacity, and performance rating, determines the amount of the proposed contract on which it may bid. *N.J.A.C.* 17:19–2.8. At the conclusion of the classification process DPMC issues the bidder a notice of classification, which includes the maximum amount of public work on which it is qualified to bid. Specifically, "[a] firm shall not be awarded a contract which, when added to the

backlog of uncompleted construction work ... would exceed the firm's aggregate rating." *N.J.A.C.* 17:19–2.13. The dispute is whether a bidder who has been adjudicated the low bidder on a particular contract must disclose as much in subsequent bid submissions if the combination of such projects would cause it to exceed its aggregate rating.

For the reasons that follow, this court answers that issue in the affirmative and also holds that a bidder's failure to disclose precludes it from providing, post-bid, clear and convincing evidence that it would nonetheless be able to perform both contracts.

## I.

On October 8, 2014, the Hudson County Schools of Technology ("HCST") solicited bids for the construction of the Applied Science Academy at its Jersey City Campus ("the HCST Project"). Defendant Brockwell & Carrington Contractors, Inc. ("Brockwell") submitted the lowest bid, in the amount of $15,490,000, followed by the second lowest bid submitted by defendant Benjamin R. Harvey Co., Inc. ("Harvey"), in the amount of $15,547,000. Dobco, Inc. ("Dobco") submitted the third lowest bid, in the amount of $15,684,000.

The bid required contractors to identify various subcontractors, including electrical work. Brockwell and Harvey both identified defendant Sal Electric Co., Inc. ("Sal Electric") as their respective electrical subcontractors. Dobco identified an electrical subcontractor other than Sal Electric. Brockwell's bid was subsequently rejected by HCST because it understated its offer.

The bid also required that each bidder and subcontractor submit a certification from the DPMC to ensure that each bidder and subcontractor was within their respective aggregate rating limit to perform the value of the work in the contract. It required them to submit a schedule of monetary value of uncompleted work to ensure that the total work on the HCST Project, when combined with their uncompleted work, would not exceed the DPMC certified aggregate rating limit.

Sal Electric has a DPMC aggregate rating limit of $15 million. On October 8, 2014, Brockwell submitted with its bid Sal Electric's DPMC Form 701 ("DPMC Form"), dated October 7, 2014, which certified that the amount of its uncompleted work on contracts was $9,816,000. Sal Electric further certified that the amount of its proposal for the HCST Project, $1,660,000, and the amount of all outstanding incomplete contracts did not exceed its prequalification dollar limit.

On September 19, 2014, Sal Electric, through its general contractor, Torcon, Inc. ("Torcon"), submitted a bid proposal for electrical work in the amount of $4 million for a Design Build Procurement project involving the Elizabeth Elementary School ("the Elizabeth Project"). Conspicuously absent from either Sal Electric's DPMC Form 701 for the HCST Project, or any other submission by Sal Electric, was the fact that, on October 3, 2014, Torcon was determined to be the low bidder for the Elizabeth Project.

On October 28, 2014, Dobco filed an order to show cause and verified complaint seeking to temporarily enjoin and restrain HCST from awarding a contract for the HCST Project, alleging that Brockwell and Harvey should be disqualified because their common subcontractor, Sal Electric, had exceeded its DPMC aggregate rating limit and thus could not perform the work on this project.

On October 29, 2014, the court entered an order (1) temporarily restraining defendants from entering a contract for the HCST Project; (2) directing certain document production by Sal Electric; (3) ordering certain document production by Harvey and Brockwell; and (4) compelling the deposition of a representative from Sal Electric. The court then converted the order to show cause into a summary proceeding, so that the parties could engage in limited discovery and more fully brief the issues involved in this case.

In a letter dated November 19, 2014, Harvey withdrew its formal bid protest as to Brockwell. Harvey has not made any subsequent filings with this court.

On November 21, 2014, by way of a motion to quash subpoenas filed by Brockwell and Sal Electric, an order was entered (1) partially granting and partially denying defendants' motion to quash nine subpoenas issued to various owners, contractors, and suppliers doing business with Sal Electric; and (2) amending the October 28 order to show cause to limit certain discovery.

Dobco now moves for summary judgment disqualifying Brockwell and Harvey, adjudicating it the lowest responsible bidder, and awarding it the contract for the construction of the HCST Project.

II.

A review of the voluminous submissions by the parties reveals two arguments for disqualifying Brockwell and Harvey, the two lowest bidders for the HCST Project. First, they both misstated the "cost amounts" for certain subcontractors in their bids. The second argument, which is central to the court's decision, is that their common subcontractor, Sal Electric, exceeded its DPMC aggregate rating limit and thus would not be able to perform work for the HCST Project.

HCST has submitted a verified answer and cross-claim asserting that both Harvey and Brockwell made material misrepresentations with regard to the "cost amounts," or bid prices, for certain subcontractors. The basis for this position is that the subcontractors' pre-bid price quotes differed from the "cost amount" Brockwell and Harvey listed for them in their bid proposals. Brockwell, on the other hand, contends that the bid specifications did not require pre-bid price quotes. Even if they did, Brockwell asserts that New Jersey law places the burden of potentially understated cost amounts on the general contractor, who cannot substitute a subcontractor and who must nonetheless perform the work at the total bid price offered.

Dobco raises the pivotal issue in this case, by asserting that (a) Sal Electric materially misrepresented its amount uncompleted of work in the DPMC Form 701 submitted with the HCST Project and that its actual amount of uncompleted work far exceeds its $15 million aggregate rating; and (b) even assuming Sal Electric's DPMC Form accurately stated its uncompleted work, its award of the Elizabeth Project, combined with its bid proposal on the HCST Project, would cause it to exceed its aggregate rating limit. As a result, Sal Electric can only perform the Elizabeth Project, whose bid date and award date were chronologically first. Since Brockwell's and Harvey's subcontractor cannot perform the work on the HCST Project, Dobco argues that they should be disqualified.

Brockwell responds by first arguing that Sal Electric was below its aggregate limit at the time of the bid opening, because the Elizabeth Project should not count toward its aggregate rating as the bid had not yet been awarded prior to the HCST Project's bid due date. Brockwell argues that a contractor cannot reasonably be deemed a "successful bidder" within the meaning of *N.J.A.C.* 17:19–2.13 until at least the actual award or execution of the contract. The Elizabeth Project was awarded on November 25, 2014; therefore, Sal Electric was not required to include it as an uncompleted work in the DPMC Form or Schedule of Contracts submitted with the HCST Project.

Brockwell next argues that, because Sal Electric need not count the Elizabeth Project, it was well under its aggregate limit as of the HCST Project's bid due date on October 8, 2014. Furthermore, Sal Electric did not misstate its aggregate rating in the DPMC Form, nor its uncompleted work in the October 8, 2014, Schedule of Contracts in Progress submitted with the bid. Brockwell emphasizes that the code's evidentiary requirement of approved invoices does not necessitate receipt of payment and that billing is not the most accurate method of calculating uncompleted work. Brockwell and Sal Electric further argue that "other similar documentation" is allowed as evidence of a firm's compli-

ance with its aggregate rating. Sal Electric completed its DPMC Form and Schedule of Uncompleted Contracts in good faith, and to the best of its ability based on project managers' in field observations, a review of the billing documents, and a review of the billing practices of each project. Brockwell contends that these methods of calculating uncompleted work are more accurate than billing because some projects do not have a formal approval process in place, others may have work that is completed but not yet billed, or as often occurs, payment requisitions may be prepared and submitted, but payment might not be received until several months later.

Brockwell further asserts that retainage, an amount withheld by the owner for work that is completed, should not be added to the amount of uncompleted work because that work is in fact complete. If retainage is deducted, Sal Electric's aggregate rating would be even further reduced below the amount it listed in its DPMC Form. Alternatively, Brockwell believes that it should now be permitted to submit evidence that Sal Electric will be below its aggregate rating at the time work for the HCST Project begins.

In reply, Dobco asserts that Brockwell's and Sal Electric's attempts to reduce Sal Electric's outstanding contract work are unavailing. Dobco maintains that (1) the statute provides that contract value of unbilled work, rather than actual outstanding amount of uncompleted work is the measuring stick; (2) only approved invoices, or something similar to approval by the payor, can be considered; (3) Brockwell's contentions concerning retainage have no relevance under the statute; (4) Sal Electric materially omitted service contracts; and (5) Sal Electric should have provided notice of the Elizabeth Project at the outset and cannot be allowed to supplement its application now.

III.

A.

*Rule* 4:46–2(c) provides that a court shall render summary judgment only when "the pleadings, depositions, answers to inter-

rogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." To determine whether there is a genuine issue as to a material fact, the court views the facts in a light most favorable to the nonmoving party. *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 523, 666 *A.*2d 146 (1995); *see also Anderson v. Liberty Lobby, Inc.*, 477 *U.S.* 242, 248, 106 *S.Ct.* 2505, 2510, 91 *L.Ed.*2d 202 (1986).

■ Generally, summary judgment is inappropriate before the completion of discovery, and a litigant should have the opportunity for full exposure of its case. *See Velantzas v. Colgate–Palmolive Co.*, 109 *N.J.* 189, 193, 536 *A.*2d 237 (1988); *Mohamed v. Iglesia Evangelica Oasis De Salvacion*, 424 *N.J.Super.* 489, 498, 38 *A.*3d 669 (App.Div.2012). However, summary judgment may be granted if further discovery will not alter the result. *Minoia v. Kushner*, 365 *N.J.Super.* 304, 307, 839 *A.*2d 90 (App.Div.), *certif. denied*, 180 *N.J.* 354, 851 *A.*2d 648 (2004).

B.

HCST, joined by Dobco, assert that Brockwell and Harvey made material misrepresentations with regard to the bid price of its subcontractors and should be disqualified.

■ Pursuant to *N.J.S.A.* 18A:18A–4(a), a public school construction contract will be awarded only by resolution of the board of education to the lowest responsible bidder after public advertising for bids and bidding. As defined by *N.J.S.A.* 18A:18A–2, the "lowest responsible bidder" means the bidder or vendor: (1) whose response to a request for bids offers the lowest price and is responsive; and (2) who is responsible. *N.J.S.A.* 18A:18A–2; *see also Meadowbrook Carting Co. v. Borough of Island Heights*, 138 *N.J.* 307, 313, 650 *A.*2d 748 (1994) ("This Court has interpreted that requirement to mean that the contract must be awarded not simply to the lowest bidder, but rather to the lowest bidder that

complies with the substantive and procedural requirements in the bid advertisements and specifications."). Accordingly, a prequalified and responsible bidder may have her bid rejected if she is deemed to be nonresponsive or unresponsive. "Responsive" is defined by *N.J.S.A.* 18A:18A–2 as "conforming in all material respects to the terms and conditions, specifications, legal requirements, and other provisions of the request."

█ A failure to conform in a material respect to the requirements of the solicitation may appear in a variety of ways, such as the omission of a dollar figure, the imperfect completion of the bid form, failure to sign the bid, the inclusion of nonsolicited conditions, and other deviations from the requirements set forth in the bid procedure. *See Gaglioti Contracting, Inc. v. City of Hoboken,* 307 *N.J.Super.* 421, 430–35, 704 *A.2d* 1301 (App.Div.1997) (low bidder's failure to include list of subcontractors with rebid on public contract was material, non-waivable defect, even though bidder supplied city with list of subcontractors within minutes of being asked, and it used same subcontractors on rebid as it had used on original bid); *see also Meadowbrook, supra,* 138 *N.J.* at 320, 650 *A.2d* 748 (the failure to include a consent of surety with a bid was held to be a material defect that could neither be waived nor cured). Given the well enunciated public policy of New Jersey that all conditions of a solicitation must apply equally to all prospective bidders, it is understandable that the courts have held that "all bids must comply with the terms imposed, and any material departure therefrom invalidates a non-conforming bid as well as any contract based upon it. If this were not the rule, the mandate for equality among bidders would be illusory and the advantages of competition would be lost." *Hillside Twp. v. Sternin,* 25 *N.J.* 317, 323, 136 *A.2d* 265 (1957).

█ If the deviations are not material to the fair competition among bidders or the clarity of the bidder's commitment to the conditions of the solicitation, the public agency may nonetheless accept the bid and waive the irregularities. *See Terminal Constr. Corp. v. Atl. Cnty. Sewerage Auth.,* 67 *N.J.* 403, 412, 341 *A.2d* 327

(1975) ("Essentially this distinction between conditions that may or may not be waived stems from a recognition that there are certain requirements often incorporated in bidding specifications which by their nature may be relinquished without there being any possible frustration of the policies underlying competitive bidding. In sharp contrast, advertised conditions whose waiver is capable of becoming a vehicle for corruption or favoritism, or capable of encouraging improvidence or extravagance, or likely to affect the amount of any bid or to influence any potential bidder to refrain from bidding, or which are capable of affecting the ability of the contracting unit to make bid comparisons, are the kind of conditions which may not under any circumstances be waived."); *Spina Asphalt Paving Excavating Contractors, Inc. v. Borough of Fairview,* 304 *N.J.Super.* 425, 430, 701 *A.*2d 441 (App.Div.1997) (an error in one unit price item, which was so obvious that the true intent of the bidder was apparent, was clearly waivable); *Hall Construction v. New Jersey Sports & Exposition Authority,* 295 *N.J.Super.* 629, 685 *A.*2d 983 (App.Div.1996) (a bidder's failure to initial a cross-out in a lump sum bid price for one item was a minor deficiency that could be waived); *Statewide Hi–Way Safety, Inc. v. N.J. Dep't of Transp.,* 283 *N.J.Super.* 223, 232, 661 *A.*2d 826 (App.Div.1995) ("While it is true that minor bid requirements may be waived, those situations are limited to matters where there is neither the possibility nor the perception of 'corruption, or favoritism' and involve requirements which do not go to the heart of the competitive bidding process."). On the other hand, a public entity is not required to accept a bid containing defects even when those defects are not material. The public entity has discretion to accept or reject, for valid reasons, bids that fail, in a non-material manner, to conform to the specifications. In order for a reason to reject a bid with a non-material defect to be considered valid, it must be "non-pretextual[,] ... reflect sound business judgment" and may not contradict the "underlying purposes of public bidding requirements." *Serenity Contracting Grp., Inc. v. Borough of Fort Lee,* 306 *N.J.Super.* 151, 156, 703 *A.*2d 352 (App.Div.1997).

■ The courts apply two criteria in determining whether a bidder's noncompliance with the terms of the advertised bid solicitations constitutes a material, non-waivable defect:

1. Whether the effect of the waiver of the bidding error would be to deprive the public entity of its assurance that the contract will be entered into, performed and guaranteed by the bidder according to its specified requirements, and,

2. Whether the noncompliance is of such a nature that its waiver would adversely affect the competitive bidding process by placing the bidder who erred in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition.

*See Meadowbrook Carting Co., supra,* 138 *N.J.* at 315, 650 *A.*2d 748 (adopting the two-part criteria set forth in *Twp. of River Vale v. R.J. Longo Constr. Co.,* 127 *N.J.Super.* 207, 216, 316 *A.*2d 737 (Law Div.1974)).

During oral argument, it was conceded that pre-bid price quotes and cost amounts were not required by the bid specifications, nor are they required under New Jersey law. *See N.J.S.A.* 40A:11–16; *Clyde N. Lattimer & Son Constr. Co. v. Twp. of Monroe Util. Auth.,* 370 *N.J.Super.* 130, 137, 850 *A.*2d 601 (App.Div.2004). ("Nowhere in the language of *N.J.S.A.* 40A:11–16 are bidders expressly required to obtain price quotes from their subcontractors prior to submitting their bids."). Even if a pre-bid price quote is submitted, the successful contractor may still negotiate with the subcontractor for a lower price. *Id.* at 138, 850 *A.*2d 601. Thus, the risk of not obtaining a pre-bid price quote (or similarly, misstating it) is placed squarely on the contractor, who cannot substitute a contractor post-bid and is locked into the total bid price regardless. *Id.* at 137–38, 850 *A.*2d 601; *see Stano v. Soldo Constr. Co.,* 187 *N.J.Super.* 524, 535, 455 *A.*2d 541 (App.Div.1983) ("If a bidder were able to substitute unlisted subcontractors, he could wait until after being awarded the bid and negotiate for a lower price, the savings from which would accrue to him and not to the public. Thus, a strict interpretation of 'all subcontractors to whom the bidder will subcontract' as those subcontractors whom the bidder will actually use is consistent with the manner in which the act has been interpreted."). As a result, understatement of

the "cost amount" is not a material defect warranting disqualification.

## C.

The issue to be decided relates to the financial qualifications of bidders for governmental contracts and whether a bidder must disclose recent bids in which it was the apparent prevailing bidder; and, if so, whether the bidder's failure to disclose prevents a supplementary submission.

Dobco contends Sal Electric has exceeded its DPMC aggregate rating limit under *N.J.A.C.* 17:19–2.13, and thus cannot perform the work for the HCST Project, both as a result of its award of the Elizabeth Project and/or its alleged misrepresentation of the value of its uncompleted work. Since Brockwell and Harvey both listed Sal Electric as a subcontractor and cannot substitute an unlisted subcontractor, their bids must both be disqualified.

*N.J.A.C.* 17:19–2.13 provides, in pertinent part:

(a) A firm shall include with each bid a statement of the current value and status of its backlog of uncompleted construction work ... as of the bid due date and a certification that the award of the subject contract would not cause the firm to exceed its aggregate rating.

\* \* \*

(c) A firm shall not be awarded a contract which, when added to the backlog of uncompleted construction work, as shown on Form DPMC 701, would exceed the firm's aggregate rating. The backlog of uncompleted construction work shall be the total contract value of unbilled work, as evidenced by the most recent approved invoice (or other similar documentation) received by the bidder before or on the date of the bid....

(d) If a firm successfully bids for two or more contracts which, either in combination with each other or in combination with the backlog of uncompleted construction work on other currently held contracts would exceed the firm's aggregate rating, the firm shall be awarded only those contracts which in combination fall within the firm's aggregate rating, as follows:

1. Contracts shall be considered in the chronological order of the bid due dates.

2. Where a given contract award would exceed the firm's aggregate rating, the firm shall not be eligible for that award.

3. However, if a firm provides with its bid clear and convincing evidence that its outstanding balance of contracts will be within its aggregate rating by the time the bid project is scheduled to begin, the Director may determine to accept the bid if it is in the best interest of the State.

■ It bears noting that this case presents issues of first impression concerning (1) how uncompleted work is tabulated, including whether service contracts and retainage are added; and, (2) what evidence can be used to prove that amount. Brockwell and Dobco concede that *N.J.A.C.* 17:19–2.13(c) does not necessitate that bills actually be paid in order to be removed from the backlog of uncompleted work. They disagree, however, on the point at which uncompleted work can be deemed complete (e.g. upon manager's decision versus actual submission of a bill), and the kind of evidence that may be presented to show completion. This court acknowledges that the code's use of the phrase, "other similar documentation" indicates that one need not wait for invoice payment to establish that the work is approved. Brockwell correctly asserts that the realities of the construction industry, in which work may sometimes be billed and not paid until months later, necessitate a less strict approach. Courts should not, however, rely solely on a subcontractor's invoice or submission. Rather, there must be indicia of approval by the payor, whether it be by email acknowledgment, notation on invoice, or some other form of confirmation. The requirement for approval or confirmation makes sense because it avoids the incentive for a contractor to submit an inflated invoice or to create, but not send, an invoice for the sole purpose of lowering its balance of uncompleted work. Indeed, through discovery, Dobco obtained evidence showing that the copies of payment applications purportedly issued and applied by Sal Electric on October 6, 2014, differed from versions possessed by the general contractors, all of which had application dates after October 8, 2014. Thus, the sensible approach is to require some sort of independent verification from a disinterested party that the work purportedly completed was, in fact, completed.

Despite the acknowledgement that some type of confirmation is needed, the question remains regarding the exact point at which work is deemed "billed" and thus complete.[1] No New Jersey case

---

[1] Although no case squarely determines a correct calculation method, the Appellate Division discussed, in dicta, "cost to complete" and "balance of

squarely decides this issue and the court need not address it at this time to conclude that Sal Electric has exceeded its DPMC aggregate rating limit and cannot be awarded the HCST Project.

Sal Electric fails the requirements of the public bidding law because it would not be in compliance with the statute on both the bid due date and the bid award date. *N.J.A.C.* 17:19–2.13 provides:

> (a) A firm shall include with each bid a statement of the current value and status of its backlog of uncompleted construction work ... as of the bid due date and a certification that the award of the subject contract would not cause the firm to exceed its aggregate rating.
>
> * * *
>
> (c) A firm shall not be awarded a contract which, when added to its backlog of uncompleted construction work, as shown on Form DPMC 701, would exceed the firm's aggregate rating....

The Appellate Division's decision in *Seacoast Builders Corp. v. Jackson Township Board of Education,* 363 *N.J.Super.* 373, 833 *A.*2d 84 (App.Div.2003) is directly on point. There, the court considered whether a bidder's aggregate rating was to be determined as of the date of the bid, as indicated by paragraph (a), or the date of the award of the contract, as indicated by paragraph (c). The court concluded that both paragraphs control:

> In our view, both paragraphs must be complied with. That is to say, we think it plain that *the bidder must include with its bid the required certification that the bid does not exceed its aggregate rating less uncompleted work and that that condition must also be met at the time of the bid award.* We think it clear that a bidder's financial situation may change during the period between submitting the bid and the contract award. For example, new contracts may be entered into during that period that may affect aggregate rating. We are satisfied, therefore, that the plain intent of the regulation was to insure the bidder's financial responsibility to undertake the work by requiring aggregate-rating compliance both when the bid is submitted and when the contract is awarded.
>
> [*Id.* at 378, 833 *A.*2d 84 (emphasis added)].

Thus, to be awarded this contract, Sal Electric must be under its aggregate rating on the bid due date (October 8, 2014) and it must

---

payment" methods for calculating uncompleted work under a prior version of the regulation. *See In re DBC Project No. A0716–00,* 303 *N.J.Super.* 384, 398–401, 697 *A.*2d 131 (App.Div.1997).

not exceed its aggregate rating on the bid award date (which will occur upon completion of this litigation). Even if, assuming arguendo that the values provided by Sal Electric in the Schedule of Contracts submitted in connection with the HCST Project were accurate, and accepting as true its representation that no other uncompleted work existed, a fact that is highly contested, Sal Electric will still exceed its aggregate rating on the HCST project's award date. The Schedule of Contracts and DPMC Form submitted with Sal Electric's bid on October 8, 2014, valued its uncompleted work at $9,816,000. Sal Electric's bid proposal for the Elizabeth Project, which was opened five days before the bids for the HCST Project were due and awarded on November 25, 2014, was $4,000,000. Sal Electric's bid on the HCST Project is $1,660,000. Combined, these figures add to $15,476,000. Thus, the award of the HCST Project to Brockwell or Harvey will necessarily cause Sal Electric to exceed its aggregate limit. Thus, by its own calculations, Sal Electric cannot perform both projects.

Brockwell's reading of "successfully bids" under *N.J.A.C.* 17:19–2.13(d) to mean that the code requires only awarded and executed contracts to be listed is unavailing. Essentially, Brockwell asserts that because Torcon was merely the numerical low bidder, and not yet awarded the Elizabeth Project, Sal Electric should not be required to disclose it. Under this logic, firms can bid on numerous projects without any regard to their aggregate rating. If accepted, that argument would wreak havoc on our public bidding system. Public entities would, in essence, be barred from determining whether a contractor and its subcontractors are able to perform until after all bid protests have been resolved. The end result would be increased costs to public entities as contractors are required to be disqualified because they, or their subcontractors, have bid on numerous projects without regard to their aggregate rating limit. This reading of the law also would allow contractors and subcontractors to manipulate the system by postponing execution of a contract until after bids for other projects are opened. This type of manipulation is the essence of what the public bidding law attempts to avoid. The public policy to be

served by the regulation is that subcontractors should be cognizant of their aggregate rating limits and proceed with caution when submitting bids. Brockwell and Sal Electric even concede that a good faith component must be read into the statute.

Brockwell and Sal Electric cannot alternatively rely on *N.J.A.C.* 17:19–2.13(d)(3). In the event that a bidder submits multiple bids that will cause it to exceed its aggregate rating limit, subsection (d)(3) provides a mechanism for such bidder to explain to the public entity why the multiple bids will not cause it to exceed its aggregate rating limit by the time work is scheduled to begin. Sal Electric failed to present any explanation or evidence at the time of its bid that it could perform both the Elizabeth Project and the HCST Project, despite knowing five days before the October 8, 2014, HCST bid due date that Torcon (and thus Sal Electric) was the successful bidder on the Elizabeth Project. Subcontractors have a good faith duty to contractors, awarding agencies, and the public to provide such information at the outset.

Brockwell's argument that it should now, months later, be allowed to submit evidence that it will be within its aggregate rating limit at the time the project is scheduled to begin is similarly unpersuasive. In essence, Brockwell and Sal Electric argue that the award of the Elizabeth Project is a subsequent development that should give it the "opportunity to present any additional information." *N.J.S.A.* 52:35–7. Brockwell, relying on the Appellate Division's decision in *In re DBC Project # A0716–00, supra,* 303 *N.J.Super.* at 384, 697 *A.*2d 131, asserts that *N.J.A.C.* 17:19–2.13(d)(3) allows for submission of such evidence post-bid. *In re DBC Project,* which allowed a contractor to submit post-bid evidence that it will be under its aggregate rating limit on the project start date, is distinguishable. In that case, the contractor erroneously submitted a DPMC Form, which was not required, listing its uncompleted work as zero. *Id.* at 388, 697 *A.*2d 131. Instead of disregarding the unsolicited form, the bidding authority requested that the contractor provide a revised form and a breakdown of uncompleted work. *Id.* at 389, 697 *A.*2d

131. The contractor did so, but was then successfully challenged as to its method of calculating uncompleted work. *Id.* at 390–91, 697 *A.*2d 131. The Appellate Division thus characterized subsection (d)(3) as a fallback for a "low bidder whose good faith belief that he was within his aggregate rating has been successfully challenged but who will be within his limit by the time of the project start." *Id.* at 402, 697 *A.*2d 131. The court emphasized that this was "not a situation involving a defect in [the contractor's] original bid which it [was] attempting to ameliorate by a post bid submission." *Id.* at 403, 697 *A.*2d 131.

Sal Electric cannot argue that it acted in good faith because it ignored the fact that it was the low bidder in the Elizabeth Project. Bids for the Elizabeth Project were opened on October 3, 2014, five days before the HCST Project bid due date. Given the prospect of being awarded two projects that, in combination with each other and its backlog of uncompleted work would cause it to exceed its limit, Sal Electric should have determined that submitting such evidence would be prudent. It had the opportunity then to be honest with its contractors and the bidding authority by disclosing that it was the low bidder in a project that may cause it to exceed its aggregate rating limit, and providing evidence that it would nonetheless be able to perform both projects. The fact that no formal bid protest regarding the Elizabeth Project was submitted until October 14, 2014, six days after the HCST Project bid due date, only buttresses this conclusion. Notably, to date, despite the vast discovery that has been afforded, Sal Electric has submitted no evidence it wishes to be considered to this effect.

Lacking the good faith alternative methodology, this court has no choice but to consider Sal Electric's bid proposals in the chronological order of their bid due dates. *See N.J.A.C.* 17:19–2.13(d)(1). Bids were due for the Elizabeth Project on September 19, 2014. HCST bids were due on October 8, 2014. Thus, Sal Electric can only be awarded the Elizabeth Project.

As a result of the forgoing, the award of this contract to Sal Electric is prohibited under *N.J.A.C.* 17:19–2.13 because it would

cause it to exceed its aggregate rating. Consequently, because Brockwell and Harvey cannot now substitute an unlisted subcontractor, their bids should be disqualified and Dobco should be adjudicated the lowest responsible bidder.

## IV

For the forgoing reasons, Plaintiff Dobco's motion for summary judgment is granted.