**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1236-19T3

SAL ELECTRIC CO., INC.,

    Plaintiff-Appellant,

v.

PLAINFIELD BOARD OF
EDUCATION, and MAGIC
TOUCH CONSTRUCTION, INC.,

    Defendants-Respondents.

_____

Argued October 27, 2020 – Decided November 25, 2020

Before Judges Haas and Natali.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Docket No. L-3244-19.

Matthew D. Lakind argued the cause for appellant (Tesser & Cohen, attorneys; Matthew D. Lakind, on the briefs).

Ramon D. Rivera argued the cause for respondent Plainfield Board of Education (Scarinci & Hollenbeck, LLC, attorneys; Amy A. Pujara, on the brief).

PER CURIAM

This appeal involves a public bidding dispute. Defendant Plainfield Board of Education (the Board) rejected plaintiff Sal Electric Company, Inc.'s (Sal Electric) bid for electrical services and instead granted the contract to defendant Magic Touch Construction, Inc. (Magic Touch). Sal Electric appeals from an October 21, 2019 Law Division order denying its request for injunctive relief and dismissing its complaint and a corresponding November 13, 2019 order denying its motion for reconsideration. After carefully reviewing the record and the applicable legal principles, we affirm.

I.

In March 2019, the Board issued a bid advertisement for electrical service and repair for the 2019 to 2020 school year. The advertisement explained the bid requirements which included that "[b]ids shall be based upon compliance with requirements of State of New Jersey, Prevailing Wage Act [(PWA)]." The advertisement also stated that the bid would only be awarded "to the lowest responsible bidder as determined by the Board" and the Board reserved "the right to reject any or all bids."

Several weeks before the bid submission was set to open, Sal Electric emailed the Board with questions and clarifications on the advertisement. Of relevance to the issue under review, Sal Electric asked the Board, "[i]f a bidder

2

submits an hourly labor rate for each category that is below the listed Prev[ailing] Wage Rate [(PWR)] as set for by the [New Jersey Department of Labor and Workforce Development], will the [Board] [r]eject their bid and deem said bid non-responsive?" The Board responded the day before the bid opened by repeating the referenced language from the advertisement stating bids must comply with the PWA.

On April 23, 2019, the Board received bids from Sal Electric and Magic Touch. It is unclear from the record how, precisely, Sal Electric responded to the advertisement. On appeal, Sal Electric included its verified complaint which appended a single page specifying its, and Magic Touch's, hourly labor rates. On its face, the document fails to state that Sal Electric intended to comply with the PWA or PWR. While the applicable PWR at the time of these submissions is unclear from the record, the parties do not dispute that Magic Touch's labor rates complied with the PWR while Sal Electric's did not.

The Board thereafter determined that Magic Touch submitted the lowest responsible bid and awarded the contract to it consistent with N.J.S.A. 18A:18A-4, which requires awarding a contract to "the lowest responsible bidder." On July 17, 2019, the Board informed Sal Electric that its bid was not successful because its "hourly rates did not meet [the PWR] for Union County." Sal

Electric immediately responded by email claiming its bid complied with the PWA because it only "applies to the wages paid from the employer to the employee" and does "not govern what the [c]ontractor can charge the customer."

On September 16, 2019, Sal Electric filed an order to show cause and a corresponding single-count verified complaint against the Board and Magic Touch protesting the Board's award of the contract to Magic Touch. Sal Electric's primary contention in the complaint was that the "[b]id [a]dvertisement did not require bidders to bid at the [PWR]" and that "[t]here [wa]s nothing in [its] bid to suggest that it will not pay the [PWR]." Sal Electric requested that the court temporarily enjoin the Board and Magic Touch from executing or performing under the contract until the matter was decided on the merits; declare Sal Electric the lowest responsible, responsive bidder; and direct the Board to award the contract to it.

During oral arguments, Sal Electric contended that the advertisement only required it to comply with the PWR, which it fully intended to do. Sal Electric also noted its prior course of conduct with the Board in which a similar contract with the Board was renewed without raising the contract price to reflect the rising PWR over subsequent years. Sal Electric argued bidding below the PWR was an effort to bid competitively and undercut its competitors. It also stated

that it was obligated to submit certified payroll documents that would show compliance with the PWR.

Sal Electric relied on two unpublished opinions for the propositions that a public entity cannot reject a bid for bidding below the PWR and a contractor is permitted to bid below the PWR. It also relied upon Riverland Constr. Co. v. Lombardo Contracting Co., 154 N.J. Super. 42, 47 (App. Div. 1977), for the principle that a contractor can apply its own business judgment in preparing a bid.

The Board argued that "a plain language reading" of the advertisement explained that the bid must comply with the PWA. As a result, the Board contended its prior course of conduct with Sal Electric and its failure to respond more specifically to Sal Electric's pre-bid question was irrelevant. It further maintained that Sal Electric failed to submit a bid that explicitly acknowledged compliance with the PWA and its decision to reject the bid was sound business judgment. As summarized by the court, the reasoning behind the advertisement's PWA requirement was to avoid going "through a whole process of termination, or having a hearing, or doing whatever may have been necessary if the workers that would satisfy this bid were not being paid in conjunction with the [PWR]."

In its oral decision, the court noted that bidding cases are fact sensitive and "need to be analyzed in terms of what the bidding documents say and what the course of conduct was" during the bidding process. The court found that Sal Electric "w[as] told here's what you need to do," that the bid must comply with the PWA. The court noted that the Board had specific reasons for the advertisement requirement and when Sal Electric previously bid with the Board, it complied with the PWA and did not submit a bid below the PWR as it did in this instance. The court found the parties to be "sophisticated" and "[t]he fact that [the Board is] taking out of the realm of the bidding here, entities bidding below [PWR] is something that [it has] determined [it] want[s] to do." As a result, the court concluded the Board's actions "were not arbitrary, capricious, or unreasonable" as the advertisement's language served as "protection" for the Board.

Sal Electric moved for reconsideration and argued the court's decision was based on plainly incorrect reasoning because the Board "never claimed that the bid was non-responsive." The Board disputed that claim and pointed out Sal Electric's bid was rejected in accordance with N.J.S.A. 18A:18-4 because it was not the lowest responsible bidder.

The court denied the motion and Sal Electric's corresponding request for a stay. In its oral decision, the court concluded that its prior order was not "based . . . on a palpably incorrect basis" nor did the court fail "to appreciate the significance of probative, competent evidence." See Cummings v. Bahr, 295 N.J. Super. 374, 384 (App. Div. 1996). In this regard, the court referenced its "explicit finding[]" that Sal Electric bid without complying with the PWA at its own peril. The court also noted that it was not bound by the unpublished cases Sal Electric cited and reaffirmed that the Board did not act "arbitrarily, capriciously[,] or unreasonably in . . . reviewing the facts that were presented to [it] and making a determination." This appeal followed.

II.

A reviewing court generally uses a deferential standard of review of governmental decisions in bidding cases. In re Protest of Award of On-Line Games Prod. & Operation Servs. Cont., Bid No. 95-X-20175, 279 N.J. Super. 566, 590 (App. Div. 1995). "The standard of review on the matter of whether a bid . . . conforms to specifications (which is a component of the ultimate issue of who is the lowest responsible bidder) is whether the decision was arbitrary, unreasonable or capricious." Protest of Award, 279 N.J. Super. at 590-93 (citing Palamar Constr. v. Twp. of Pennsauken, 196 N.J. Super. 241, 250 (App. Div.

7

1983); Stano v. Soldo Constr. Co., 187 N.J. Super. 524, 534 (App. Div. 1983)). If a public entity's decision is grounded rationally in the record and does not violate the applicable law, it must be upheld. Ibid. In general, an appellate court gives deference to the factual findings of a trial court, while reviewing the trial court's legal conclusions de novo. D'Agostino v. Maldonado, 216 N.J. 168, 182-83 (2013).

### III.

Sal Electric initially contends, as it did before the trial court, that the Board could not reject its bid merely because it was below the PWR. It argues that "absent any evidence of fraud, collusion, or other afront to the public bidding process, a conforming bid must be accepted by the public entity." In support, Sal Electric relies on the public policy behind competitive public bidding to assert that "bid price alone does not implicate its ability (or 'responsibility') to pay its employees at or above the PWR." We disagree with all of these arguments.

The PWA was enacted "to establish a prevailing wage level for workmen engaged in public works in order to safeguard their efficiency and general well[-]being and to protect them as well as their employers from the effects of serious and unfair competition resulting from wage levels detrimental to efficiency and

A-1236-19T3

well-being." N.J.S.A. 34:11-56.25. "[E]very public-work contract in excess of [the PWR "threshold amount" as set forth by the Department of Labor and Workforce Development Commissioner], to which any public body is a party, must provide that workmen employed to perform the contract be paid at least the prevailing wage rate." Dep't of Lab. v. Titan Const. Co., 102 N.J. 1, 6 (1985); see also N.J.S.A. 34:11-56.26(11).

The PWA defines "prevailing wage" as "the wage rate paid by virtue of collective bargaining agreements by employers employing a majority of workers of that craft or trade subject to said collective bargaining agreements, in the locality in which the public work is done." N.J.S.A. 34:11-56.26(9). The Commissioner is empowered to establish the PWR for a particular craft or trade in a locality in accordance with these rules. N.J.S.A. 34:11-56.30. Nothing in the PWA, however, prohibits "the payment of more than the [PWR]." N.J.S.A. 34:11-56.28.

The PWA also requires in pertinent part that:

> [e]very contract in excess of the prevailing wage contract threshold amount for any public work . . . shall contain a provision stating the [PWR] which can be paid . . . to the workers employed in the performance of the contract and the contract shall contain a stipulation that such workers shall be paid not less than such [PWR]. Such contract shall also contain a provision that in the event it is found that any worker . . . has been

> paid a rate of wages less than the [PWR] . . . , the public body . . . may terminate the contractor's or subcontractor's right to proceed with the work . . . . The contractor and his sureties shall be liable for any excess costs occasioned thereby to the public body . . . .
>
> [N.J.S.A. 34:11-56.27 (emphasis added).]

Contracts for public schools are governed by the Public Schools Contracts Law, N.J.S.A. 18A:18A-1 to -59. Under that statute, if the cost of a contract exceeds the "bid threshold," a board of education is obligated to award the contract to the "lowest responsible bidder after public advertising for bids and bidding therefor." N.J.S.A. 18A:18A–4(a). The statute defines "lowest responsible bidder" as the bidder "(1) whose response to a request for bids offers the lowest price and is responsive; and (2) who is responsible." N.J.S.A. 18A:18A–2(t). "Responsive" means "conforming in all material respects to the terms and conditions, specifications, legal requirements, and other provisions of the request." N.J.S.A. 18A:18A–2(y); see also Gaglioti Contracting, Inc. v. City of Hoboken, 307 N.J. Super. 421, 431 (App. Div. 1997) (holding a "responsible bidder" under the Local Public Contracts Law[1] is one that "complies with the

---

[1] The Local Public Contracts Law governs public contracts with local governments including any county, municipality, and non-State "board, commission, committee, authority[,] or agency" other than a board of education. N.J.S.A. 40A:11-2(1). Like the Public Schools Contracts Law, local

substantive and procedural requirements in the bid advertisements and specifications" (quoting Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 313 (1994))).

Public bidding laws are intended to "secure for the taxpayers the benefits of competition and to promote the honesty and integrity of the bidders and the system." Protest of Award, 279 N.J. Super. at 589. These statutory provisions are to be "construed as nearly as possible with sole reference to the public good. Their objects are to guard against favoritism, improvidence, extravagance and corruption; their aim is to secure for the public the benefits of unfettered competition." Ibid. (quoting Keyes Martin & Co. v. Dir., Div. of Purchase & Prop., 99 N.J. 244, 256 (1985)).

The conditions and specifications of a bid "must apply equally to all prospective bidders; the individual bidder cannot decide to follow or ignore these conditions." Hall Constr. Co. v. N.J. Sports & Exposition Auth., 295 N.J. Super. 629, 635 (App. Div. 1996). Moreover, any material departure from the bid specifications renders a bid nonconforming and invalid. Ibid. Although

---

governments must grant a contract to the "lowest responsible bidder." N.J.S.A. 40A:11-4. The definition of lowest responsible bidder in the Local Public Contracts Law is identical to the Public Schools Contracts Law. N.J.S.A. 40A:11-2(27).

11

minor or inconsequential discrepancies and technical omissions can be waived, material conditions cannot be waived by the contracting authority. Meadowbrook Carting, 138 N.J. at 314.

The New Jersey Supreme Court has provided the following explanation regarding material and non-waivable conditions under the Local Public Contracts Law:

> waiver is capable of becoming a vehicle for corruption or favoritism, or capable of encouraging improvidence or extravagance, or likely to affect the amount of any bid or to influence any potential bidder to refrain from bidding, or which are capable of affecting the ability of the contracting unit to make bid comparisons, are the kind of conditions which may not under any circumstances be waived.
>
> [Terminal Constr. Corp. v. Atl. Cnty. Sewerage Auth., 67 N.J. 403, 412 (1975).]

Previous examples of material departures have included "the omission of a dollar figure, the imperfect completion of the bid form, failure to sign the bid, [and] the inclusion of non[-]solicited conditions." Dobco, Inc. v. Brockwell & Carrington Contractors, Inc., 441 N.J. Super. 148, 158 (Law Div. 2015) (citing Gaglioti, 307 N.J. Super. at 430-35).

One of the clear purposes of the PWA is to require, where applicable, contractors to pay their workers the PWR. For example, the statute expressly

permits entities like the Board to terminate a contract in the event a contractor fails to comply with the PWR. N.J.S.A. 34:11-56.27; see also N.J.S.A. 34:11-56.34 (allowing a worker two years to protest the payment of wages below the PWR). An advertisement that requires compliance with the PWA and then essentially waives the condition by accepting bids that are below the PWR after submission of bids would not allow the Board to make appropriate bid comparisons and would encourage the kind of favoritism and corruption the public contracts laws were designed to deter. Indeed, if the Board cast this requirement aside, it would create an unfair disadvantage to bidders complying with the PWA by comparing their bids to lower non-compliant bids, contrary to the public policy of a competitive bidding process. See Hall Constr., 295 N.J. Super. at 635 (holding conditions and specifications of a bid "must apply equally to all prospective bidders").

We disagree with Sal Electric's argument that the outcome of requiring compliance with the PWA will lead to "all bids . . . be[ing] equal in price." Bidders can vary their rates for journeymen, foremen, electrician helpers, or material mark up at their own discretion. Each bidder can apply its individualized considerations when setting these rates to formulate the most competitive bid that complies with the PWA and, necessarily, the PWR.

We conclude the Board's decision to require all bidders to comply explicitly with the PWA was reasonable. As noted, if a contractor pays a worker below the PWR then the Board would have the authority to "terminate the contractor's . . . right to proceed with the work" and the contractor would be "liable for any excess costs occasioned thereby to the public body." N.J.S.A. 34:11-56.27. While the contractor would hold ultimate financial liability, a decision to terminate a contractor's bid implicates procedural due process requirements of providing notice and holding a hearing. See George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 20-21, 36 (1994) (discussing administrative due process requirements of terminating a contract under the Turnpike Authority public contracts law, which has "identical" operation and policy as the Local Public Contracts Law).

Although we acknowledge that the Board could hypothetically measure a contractor's PWA compliance through a forensic review of payroll records or past performance, we see nothing unreasonable, arbitrary, or capricious about the Board requiring all contractors to base their bids in compliance with the PWA, which does require contractors to pay the PWR or risk cancellation of the contract. In essence, the Board's requirement, while not guaranteeing compliance by all contractors, nevertheless provides additional certainty for the

Board that a contractor will comply with the PWA and avoid potential work interruptions attendant to a cancelled contract while any disputes are adjudicated. We also note that in the record on appeal, Sal Electric's response to the advertisement failed to confirm it would comply with the PWA or PWR.

As Sal Electric's bid did not meet a material requirement of the advertisement, it was not "responsive" within the meaning of N.J.S.A. 18A:18A–2(y) and thereby not the "lowest responsible bidder" under N.J.S.A. 18A:18A–2(t). As such, the Board was well within its authority to reject Sal Electric's bid and its decision was not arbitrary, capricious, or unreasonable.

We also reject Sal Electric reliance on Sevell v. New Jersey Highway Authority for the proposition that "there is no reason to invalidate a winning bid" without a showing "the bidding procedure or the bid specifications undermine the principals of fair and competitive bidding." 329 N.J. Super. 580, 584-85 (App. Div. 2000). In Sevell, we approved a New Jersey Highway Authority decision to accept an otherwise conforming bid that provided towing services to motorists without charge because the bidding process did not create an opportunity for fraud or corruption and ensured that the successful bidder would be able to perform the required services. Id. at 587-88. Unlike the bidder

in <u>Sevell</u>, Sal Electric never submitted a bid in conformity with the Board's specifications.

For similar reasons, Sal Electric's reliance on <u>D. Stamato & Co. v. Twp. of Vernon</u>, 131 N.J. Super. 151 (App. Div. 1974), is unpersuasive. In <u>Stamato</u>, the township rejected plaintiff's low bid based on the township's claim that Stamato's previous work for the township in which it was the lowest bidder was defectively performed. <u>Id.</u> at 157. We found the township's conclusion that plaintiff was not a responsible bidder was arbitrary and unreasonable because "[t]he township d[id] not challenge plaintiff's experience, financial ability or moral integrity, nor does it even suggest that plaintiff does not have the facilities necessary to perform the contract." <u>Ibid.</u> Again, the bidder in <u>Stamato</u> unquestionably satisfied all requirements of the public bid. Not so here. Sal Electric failed to include labor rates that complied with the PWA in response to the advertisement, a simple but important condition that provided the Board with reasonable certainty that the bidding contractors' workers would be paid in accordance with the PWA.

IV.

Sal Electric also argues that this court should create bright line rules on whether a bid can be rejected for labor rates below the PWR and whether public

16

entities can require bids at the PWR because of the "great public importance" behind such rules. We are unpersuaded with this argument and reject it.

Here, Sal Electric's dispute was resolved after the court reviewed the record and concluded that it failed to comply with a material condition in the Board's public contract advertisement. We decline to give an advisory opinion or make rulings in the abstract. See De Vesa v. Dorsey, 134 N.J. 420, 428 (1993); Crescent Park Tenants Ass'n v. Realty Equities Corp. of N.Y., 58 N.J. 98, 108 (1971); see also G.H. v. Twp. of Galloway, 199 N.J. 135, 136 (2009) (instructing that courts should not "answer abstract questions or give advisory opinions"). Future bid disputes should be decided, as here, by the language of the bid documents, the relevant statutory language, and upon an analysis if the applicable public agency's decision was arbitrary, capricious, or unreasonable.

To the extent we have not addressed any of defendant's remaining arguments it is because we have determined that they are without sufficient merit to warrant discussion in a written opinion. See R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1236-19T3