NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0179-25

ML, INC.,

      Plaintiff-Appellant/Cross-
Respondent,

v.

EDISON TOWNSHIP BOARD
OF EDUCATION and VANAS
CONSTRUCTION CO., INC.,

      Defendants-Respondents.

_____

BENARD ASSOCIATES, INC.,

      Plaintiff-Respondent/Cross
Appellant,

v.

EDISON TOWNSHIP BOARD OF
EDUCATION, VANAS
CONSTRUCTION CO., INC.,
and ML, INC.,

      Defendants-Respondents.

_____

| APPROVED FOR PUBLICATION |
| --- |
| **November 18, 2025** |
| APPELLATE DIVISION |

Argued October 27, 2025 – Decided November 18, 2025

Before Judges Sabatino, Natali and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Docket Nos. L-3854-25 and L-3941-25.

Greg Trif argued the cause for appellant/cross-respondent ML, Inc. (Trif & Modugno, LLC, attorneys; Greg Trif and Kyle H. Cassidy, of counsel and on the briefs).

Allan C. Roth argued the cause for respondent Edison Township Board of Education (Ruderman & Roth, LLC, attorneys; Allan C. Roth and Jeffrey J. Berezny, on the brief).

Matthew D. Lakind argued the cause for respondent/cross-appellant Benard Associates, Inc. (Tesser & Cohen, PC, attorneys; Matthew D. Lakind and Lee Tesser, on the briefs).

George E. Pallas argued the cause for respondent Vanas Construction Co., Inc. (Cohen, Seglias, Pallas, Greenhall & Furman, PC, attorneys; George E. Pallas and Timothy R. Ryan, of counsel and on the briefs).

The opinion of the court was delivered by

SABATINO, P.J.A.D.

This appeal and cross-appeal in a public bidding dispute originated before us through emergent applications. The case arises from the award of an anticipated public school construction contract to the company deemed by the Edison Township Board of Education to be the "lowest responsible bidder"

2

pursuant to N.J.S.A. 18A:18A-4(a). The planned construction involves an addition to one of the district's intermediate-level schools.

Among others, the Board received bids from plaintiff ML, Inc. ("ML"), plaintiff Benard Associates, Inc. ("Benard"), and defendant Vanas Construction Co., Inc. ("Vanas"). Of the three bids submitted by the parties, Benard's bid was the lowest ($14,885,000), ML's bid was the second lowest ($14,975,000), and Vanas's bid was the highest ($15,540,000). That represents a spread of $655,000 between the lowest bid by Benard and the highest bid by Vanas.

Shortly after the bid opening, the Board announced at a public meeting its decision to award the contract to Vanas. The Board deemed Vanas to be the "lowest responsible bidder," concluding that its bid, unlike those of ML and Benard, did not suffer from any material defect.

ML and Bernard each filed suit in the Law Division to halt and overturn the award to Vanas, and their lawsuits were eventually consolidated. On the return date of the order to show cause, the trial court denied the plaintiffs' requests for a preliminary injunction.

ML filed an emergent application with this court, and Benard filed an emergent cross-appeal, each of them respectively arguing that they are the lowest responsible bidder. We entered an interim stay of the Board's award and

the work on contract pursuant to Rule 2:9-8. We have since considered extensive briefing and oral argument on the merits.

For the reasons that follow, we affirm the trial court's preliminary determination upholding the Board's award to Vanas. We agree with the trial court that the Board reasonably rejected ML's bid as materially defective because of the staleness of the information—on what is known as DPMC Form 701 ("the DPMC form")—attesting to the status of work that ML's electrical subcontractor was obligated to perform on other pending projects.

As we will explain in more detail, the DPMC form, which was developed by the New Jersey Department of Treasury, requires each bidder to provide "current" information about the status of its outstanding work and that of its designated subcontractors. See N.J.A.C. 17:19-2.13 (specifying the required contents of the form). In its role as the procurement agency, the Board reasonably concluded the lengthy gap of over five months between the date of the DPMC form in December 2024 and the bid opening date in June 2025 rendered ML's bid unresponsive. In making that assessment, the Board had the statutory authority as a local procurement agency to treat the DPMC form's untimeliness more stringently than the Treasury otherwise might have on a State contract.

We further sustain the trial court's decision to deny relief to Benard. The Board had a reasonable basis to reject Benard's bid because of its non-compliance with the Board's bid bond requirements. In particular, unlike Vanas, Benard's bid bond was dated over one month before the opening date of bid submissions and, notably, before a contract Addendum issued in the interim by the Board had materially altered the project's scope of work and pricing.

We further uphold the trial court's determinations that: (1) neither ML nor Benard had proven comparable material deficiencies in Vanas's bid submissions; and (2) there was no need for the Board to conduct a bidder responsibility hearing.

Because the record before us suffices to determine the legal issues with finality, we modify the trial court's decision and convert it from a preliminary ruling to a final ruling that affirms the contract award to Vanas.

I.

The pertinent facts are largely undisputed and reflected in the non-testimonial documentary record. We summarize the background briefly.

The School Construction Project and The Bid Solicitation

The case arises from a public bidding process for a construction project described in the Board's advertisement for bids as an "Addition at James

5

Madison Intermediate School."  Among a great many other things, the Board's solicitation of bids required bidders to:

- Submit with their bid a "Form of Proposal, fully executed and notarized."

- Submit a "Certificate of Surety from the Bidder[']s Surety Company."

- Guarantee their bid in the form of <u>a Bid Bond</u> written by a Surety authorized to do business in the State bearing "the <u>same date as the Form of Proposal</u>."

- Include with their bid a "NJ Department of Treasury Total Amount of Uncompleted Contracts Certification, <u>DPMC Form 701 (or other certified form indicating amount of uncompleted contracts of the date of the bid opening</u>), for Bidder and all Prime Subcontractors (Steel, HVAC, Plumbing, Electric)."

[(Emphasis added).]

The Board's solicitation further required bidders to submit a base bid for the primary scope of the work, along with separate pricing for three "alternates" modifying the construction in various specified aspects.

The bid submission deadline for all interested parties was initially set by the Board as 2:00 p.m. on May 13, 2025.  That initial bid date was later

6

adjourned to May 20, 2025, and was then further adjourned again to a final bid opening date of June 10, 2025.

Meanwhile, on May 30, 2025, the Board issued "Addendum #4," which made several modifications to the project's specifications, increased the scope of work, and added multiple new design drawings.

The Three Parties' Bid Submissions

On June 10, 2025, ML, Benard, and Vanas each submitted bid packages with the Board, the prices of which are listed below as follows (in descending order from the lowest bid to the highest):

| Bidder | Base Bid | Alt. 1 | Alt. 2 | Alt. 3 |
|--------|----------|--------|--------|--------|
| Benard | $14,885,000 | $540,000 | $30,000 | $176,000 |
| ML | $14,975,000 | $650,000 | $95,000 | $85,000 |
| Vanas | $15,450,000 | $483,500 | $94,000 | $178,000 |

On June 12, 2025, Vanas submitted a formal protest letter to the Board identifying what it alleged to be "non-waivable bid defects" pertaining to the respective bids of ML and Benard. Regarding ML's alleged deficiencies, Vanas asserted: (1) ML's electrical subcontractor's DPMC form was dated December 18, 2024, a date nearly six months before the bid opening of June 10, 2025; and (2) that ML's Form of Proposal had not been notarized.

7

Additionally, as to Benard, Vanas asserted that: (1) its bid bond and consent of surety were dated May 13, 2025, rather than the proper bid opening date; (2) its DPMC form was dated May 6, 2025, approximately one month before the bid opening; and (3) its Form of Proposal lacked a notarized signature.

The Board's Decision and Ensuing Protests

At a public meeting on June 17, 2025, the Board announced it had rejected the bids submitted by ML and Benard and had awarded the anticipated contract for the school addition project to Vanas.

Benard filed a protest letter the following day, inquiring as to why its bid had been rejected by the Board. A week later, the Board responded by letter, explaining that Benard's bid had been rejected because its: (1) bid bond had "failed to bear the same date as the form of proposal"; and (2) certification of uncompleted documents had failed to comply with the Board's dating requirement.

On June 25, 2025, ML filed a verified complaint and order to show cause with the Law Division seeking temporary restraints against the Board to prevent it from awarding or executing the anticipated contract with Vanas. Benard likewise filed a verified complaint and order to show cause seeking similar relief.

8

ML and Benard argued that the Board had acted arbitrarily, capriciously, and unreasonably in selecting Vanas's higher bid over their own lower bids, particularly noting that Vanas's subcontractors' DPMC forms had been dated five, seven, and nine days earlier than the bid opening. After a case management conference, Benard's case was formally consolidated with that of ML.

Amplifying its position, the Board submitted a letter to the trial court elaborating its grounds for rejecting the bids of ML and Benard and awarding the anticipated contract to Vanas. Although Benard's bid had conveyed the lowest submitted price for the project, the Board stated that Benard's: (1) bid bond and consent of surety had not been dated with the same date of its submitted bid, as required by the Board's instructions; (2) DPMC form had been improperly dated May 6, 2025, and was therefore "not accurate on the day of the bid of June 10, 2025"; and (3) Form of Proposal lacked a notarized signature, as specified in the bid proposal checklist provided to the parties.

Regarding ML, the Board found that its: (1) DPMC form was improperly dated December 18, 2024; and (2) Form of Proposal also lacked a notarized signature.

 A-0179-25

The Board recognized that Vanas's bid was the highest of the three, but nevertheless characterized it as the only bid received that was wholly complete without defect.

The Trial Court's Decision

The trial court held a non-testimonial proceeding on the orders to show cause, with argument from counsel for the three bidders and the Board. Three days later, the court issued an oral decision on September 5, 2025, in which it upheld the Board's decision rejecting the bids submitted by ML and Benard and awarding the anticipated contract to Vanas.

More specifically, the trial court concluded that:

- The Board had acted arbitrarily and capriciously in disqualifying the bids of ML and Benard for non-compliance with its notarization provision, as the Board "failed to demonstrate how waiver of technical compliance of [this] provision would impair the public interest."

- ML and Benard had not "proved that the [B]oard acted in an arbitrary and capricious [manner] in rejecting the[ir] bid[s] for non-compliance" because of the early dates that had been provided on those parties' DPMC forms.

- "[I]n giving deference to the [B]oard," the waiver that was given to Vanas by the Board "as to their dating of the DPMC forms was not arbitrary capricious."

- Benard's failure "to submit a bid bond and a consent of surety bearing the same date as the form of proposal" <u>was</u> a "material non-waivable defect under New Jersey law."

- A provision of ML's bid "dealing with additional work" <u>was not</u> disqualifying, despite ML's failure to explicitly identify whether the costs that were listed amounted to "addition[s]" or "deduction[s]" because it was "obvious" to the court that these figures reflected an additional cost rather than a deduction.

Accordingly, the trial court entered a final order and judgment denying the preliminary injunctive relief ML and Benard had requested under the criteria of <u>Crowe v. De Gioia</u>, 90 N.J. 126 (1982). Consequently, the court dismissed the consolidated action with prejudice.

<u>The Present Appeals and Requests for Emergent Relief</u>

Ten days later, ML filed an emergent appeal with this court, requesting that we: (1) temporarily and preliminarily enjoin the Board from entering into the anticipated contract with Vanas; (2) rescind, vacate, and declare null and void the anticipated contract between the Board and Vanas; (3) rescind, vacate, and declare null and void any resolution awarding the anticipated contract to Vanas; and (4) declare ML to be entitled to the anticipated contract "as the lowest responsive bidder." That same day, we temporarily stayed the anticipated contract pursuant to <u>Rule</u> 2:9-8. Benard then filed a cross-appeal, arguing that,

11

as the alleged lowest responsible and responsive bidder, it was entitled to the contract award. The Board and Vanas filed opposition, and we heard oral argument after accelerated briefing.

## II.

The applicable principles of public bidding law governing this case are as follows.

Statutory Procurement Law Governing Boards of Education Contracts

N.J.S.A. 18A:18A-4(a) prescribes, in relevant part, that:

> Every contract for the provision or performance of any goods or services, the cost of which in the aggregate exceeds the bid threshold, shall be awarded only by resolution of the board of education to the lowest responsible bidder after public advertising for bids and bidding therefor, except as is provided otherwise in this chapter or specifically by any other law.
>
> [(Emphasis added).]

Defined in N.J.S.A. 18A:18A-2(t), a "lowest responsible bidder" in this context means a bidder: "(1) whose response to a request for bids offers the lowest price and is responsive; and (2) who is responsible." (Emphasis added).

Although the vocabulary may sound like synonyms, a "responsive" bidder is one who conforms "in all material respects to the terms and conditions, specifications, legal requirements, and other provisions of the request." N.J.S.A.

18A:18A-2(y) (emphasis added). A "responsible" bidder, on the other hand, is one who is "able to complete the contract in accordance with its requirements, including but not limited to requirements pertaining to experience, moral integrity, operating capacity, financial capacity, credit, and workforce, equipment, and facilities availability." N.J.S.A. 18A:18A-2(x).[1]

General Bid Conformity Principles

In general, when reviewing a procurement agency's determination as to bid conformity, courts consider whether "the determination was not arbitrary or unreasonable." DGR Co. v. State, Dep't of Treasury, Div. of Prop. Mgmt. and Constr., 361 N.J. Super. 467, 474 (App. Div. 2003) (citing In re Protest of Award of On-Line Games Prod. & Operation Servs. Cont., Bid No. 95-X-20175, 279 N.J. Super. 566, 593 (App. Div. 1995) ("On-Line Games")). When performing that judicial review, "[t]he preliminary inquiry is whether the bid deviates from the [bid instructions]." On-Line Games, 279 N.J. Super. at 594. If a bid does

---

[1] A board of education is permitted under the statutory scheme to disqualify a party who would otherwise be the lowest responsible bidder because of certain previous "negative experience." N.J.S.A. 18A:18A-4(a). No such disqualification was invoked by the Board as to any of the three bidders here.

not deviate from the instructions, the bid is considered conforming. Ibid.; see also In re Jasper Seating Co., Inc., 406 N.J. Super. 213, 223 (App. Div. 2009).

As a matter of law, where a bid contains a deviation, that deviation can only be waived if it is not material. In re Jasper, 406 N.J. Super. at 223-24 (citing On-Line Games, 279 N.J. Super. at 595). To determine whether a bid deviation is material, courts generally employ a two-part test first enunciated in Twp. of River Vale v. R.J. Longo Constr. Co., 127 N.J. Super. 207 (Law Div. 1974) ("River Vale"), and which the Supreme Court subsequently adopted in Meadowbrook Carting Co. v. Borough of Island Heights, 138 N.J. 307, 315 (1994).

First, a reviewing court must determine whether a waiver of the deviation would "deprive the [public entity] of its assurance that the contract will be entered into, performed and guaranteed according to its specified requirements . . ." River Vale, 127 N.J. Super. at 216. Second, the court must decide whether the deviation "is of such a nature that its waiver would adversely affect competitive bidding by placing a bidder in a position of advantage over other bidders or by otherwise undermining the necessary common standard of competition." Ibid. (citations omitted). Where "deviation from the [bid instructions] is found to be substantial[,]" i.e., material, "under the River Vale

A-0179-25

standard, it may not be waived and the inquiry is over because a 'non-conforming bid is no bid at all.'" In re Jasper, 406 N.J. Super. at 223-24 (quoting On-Line Games, 279 N.J. Super. at 595).

"[A] public entity may not waive any material departure from bid specifications or requirements of law, and is bound to reject a non-conforming bid with such defects." Serenity Contracting Grp., Inc. v. Borough of Ft. Lee, 306 N.J. Super. 151, 156 (App. Div. 1997) (citing Hillside Twp. v. Sternin, 25 N.J. 317, 324-25 (1957)) (emphasis added). However, even when a bid defect is properly determined to be non-material, a public entity is not always required to accept it. See ibid. A public entity is permitted, at its discretion, to either accept or reject a bid that does not conform "with specifications or formal requirements in non-material respects[,]" so long as the public entity's decisions "reflect sound business judgment" and do not "bespeak any avoidance of the underlying purposes of public bidding requirements." Id. at 156-57 (citing Terminal Constr. Corp. v. Atl. Cnty. Sewerage Auth., 67 N.J. 403, 431 (1975)).

Judicial Review

In the present case, the trial court considered the arguments of the disappointed bidders, i.e., ML and Benard, in light of these principles, and

A-0179-25

rejected their claims for relief.  On appeal of that ruling, we are guided by several related principles.

"The standard of review on the matter of whether a bid on a local public contract conforms to specifications . . . is whether the decision was arbitrary, unreasonable or capricious."  On-Line Games, 279 N.J. Super. at 590 (citing Palamar Constr. v. Twp. of Pennsauken, 196 N.J. Super. 241, 250 (App. Div. 1983); Stano v. Soldo Constr. Co., 187 N.J. Super. 524, 534 (App. Div. 1983)) (emphasis added).  An agency's ultimate determination should be sustained unless the decision is "not supported by substantial credible evidence in the record as a whole.'"  Barrick v. State, 218 N.J. 247, 259 (2014) (quoting In re Stallworth, 208 N.J. 182, 194 (2011) (alteration in the original)).

Even where the court would have reached a different conclusion than the municipal body it is reviewing, "'there can be no judicial declaration of invalidity in the absence of clear abuse of discretion by the public agencies involved.'  It is not the function of a reviewing court to substitute its judgment for that of the [municipal] body. . ."  Palamar Constr., 196 N.J. Super. at 250 (quoting Kramer v. Sea Girt Bd. of Adj., 45 N.J. 268, 296-97 (1965)).  That said, we apply de novo review to pure questions of law that govern the circumstances.

A-0179-25

See D'Agostino v. Maldonado, 216 N.J. 168, 182-83 (2013) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

### III.

Bearing in mind these principles, we first address what turns out to be the pivotal valid reason[2] for rejecting ML's bid: the stale nature of the information on its electrical subcontractor's DPMC form.

Regulatory Framework of DPMC Form 701

"[P]rospective bidders for public work are required to be preclassified by the Division of Property Management and Construction ["DPMC"] . . . in the [New Jersey] Department of the Treasury in accordance with the provisions of N.J.A.C. 17:19-2.1 to -2.7." Dobco, Inc. v. Brockwell & Carrington Contractors, Inc., 441 N.J. Super. 148, 151 (Law Div. 2015). The DPMC then calculates and classifies each bidder's "aggregate rating" based upon a variety of factors, including "the bidder's working capital, bonding capacity, and performance rating" to determine the amount of the proposed contract on which

---

[2] We are cognizant that the Board and the other two bidders contended that ML's bid was also materially defective because it did not specify whether certain extra work would result in additions or deductions to the contract price. The trial court disagreed with their contentions. We likewise are not persuaded that the manner in which ML presented this information was materially insufficient, as it could be reasonably presumed the extra work involved would most likely increase the price.

A-0179-25

a bidder may bid. Ibid. "At the conclusion of the classification process DPMC issues the bidder a notice of classification, which includes the maximum amount of public work on which it is qualified to bid." Ibid.[3]

When a party signs DPMC Form 701 ("Total Amount of Uncompleted Contracts"), the party certifies that "[t]he amount claimed includes uncompleted portions of all currently held contracts from all sources (public and private) in accordance with N.J.A.C. 17:19-2.13." Central to the parties' arguments on appeal, N.J.A.C. 17:19-2.13(c), as amended in 2016, currently states:

> A firm shall not be awarded a contract which, when added to the backlog of uncompleted construction work, would exceed the firm's aggregate rating. The backlog of uncompleted construction work shall be the total contract value of unbilled work, as evidenced by the most recent approved invoice (or other similar documentation) received by the bidder before or on the date of the bid. The firm may deduct 85 percent of the total contract value of the work performed by principal trades . . . on such uncompleted work. DPMC may require the firm to provide documentary proof that its

---

[3] Dobco concerned a dispute that arose over "whether a bidder who has been adjudicated the low bidder on a particular contract must disclose as much in subsequent bid submissions if the combination of such projects would cause it to exceed its aggregate rating." 441 N.J. Super. at 152. The court held that "a bidder's failure to disclose precludes it from providing, post-bid, clear and convincing evidence that it would nonetheless be able to perform both contracts." Ibid. Unlike Dobco the situation here does not involve such a post-bid submission. Instead, it concerns the question of whether a party's allegedly "stale" DPMC Form 701 amounts to a material and non-waivable defect of that party's bid, a question that has not been addressed to date in a published opinion.

backlog of uncompleted work plus the contract price of the contract to be awarded <u>would not cause the firm to exceed its aggregate rating</u>.

[(Emphasis added).]

When N.J.A.C. 17:19-2.13 was most recently amended in 2016, the DPMC provided the following explanation of its proposed amendment in the New Jersey Register:

> DPMC . . . proposes to amend N.J.A.C. 17:19-2.13(c) to strike the reference to Form DPMC 701, calling for bidders to disclose, among other things, the current value and status of its work backlog. . . . <u>DPMC does not require</u> bidders to provide this disclosure. Additionally, subsection (c) is proposed for amendment <u>to expressly recognize DPMC's authority to require a firm, as a condition of contract award following bid opening, to document its backlog of uncompleted work and demonstrate that the award of the contract, together with the firm's current backlog, will not cause the firm to exceed its aggregate rating</u>.
>
> [48 N.J.R. 1495(a) (proposed Aug. 1, 2016) (emphasis added).]

The proposal further elaborated:

> Having a firm substantiate the amount of its current work backlog as a condition of contract award <u>rather than in its bid proposal</u>, as required under existing subsection (a) (and proposed for amendment), <u>provides a more thorough, effective, and efficient way for DPMC</u> to avoid the award of contracts to firms in excess of their financial capacity to perform.

19

[Ibid. (emphasis added).]

After receiving comments from the public about its proposed amendments, the Treasury chose not to eliminate the DPMC Form 701 requirement entirely. Instead, it retained the requirement, with the final language in N.J.A.C. 17:19-2.13 we have quoted above. The following comment at the time of the amended rule's adoption provides some insight into Treasury's regulatory action:

> 2. COMMENT: [A commenter] expresses concern with the proposed amendment of N.J.A.C. 17:19-2.13(a), specifically, the elimination of the requirement that firms bidding on a project must include with the bid a statement of the current value and status of its backlog of uncompleted work as of the bid due date. The proposed amendment would leave in place the requirement that the firm provide a certification that its bid amount will not cause the firm to exceed its aggregate ratings limit, when added to the firm's then-current backlog of uncompleted work.
>
> RESPONSE: As the Division of Property Management and Construction (Division) does not currently require submission of a detailed backlog statement with the bid, elimination of the requirement from the proposed rule simply brings it in line with current Division practice. In the Division's view, the furnishing of a certification with the bid is sufficient to protect the public interest. The rule is intended to prevent award of a contract that will not cause the successful low bidder to exceed its aggregate limit. This purpose can be effectively addressed by providing the Division with the authority to require the low bidder to document its work backlog

20

> before the contract is awarded.. . . (See the Response to Comment No. 3). Moreover, because the dollar value of a firm's work backlog may change between the time of bid opening and the time of contract award, a detailed backlog statement provided with the bid is of limited value.
>
> 3. COMMENT: [A commenter] expresses concern with the proposed amendment of N.J.A.C. 19:17-2.13(c), specifically, the provision, which allows the Division to require the successful bidder to disclose its backlog of uncompleted work prior to contract award rather than at the time of bid opening.
>
> RESPONSE: See the Response to Comment No. 2. The Division currently defers the disclosure of work backlog until the time of bid award, and in this respect, the amendment only brings the rules in line with established Division practice.
>
> [48 N.J.R. 2830(a) (adopted Dec. 19, 2016) (emphasis added).]

In sum, N.J.A.C. 17:19-2.13 (as amended) and the DMPC form require the bidder on a State contract to certify that it and its designated subcontractors will not cause the bidder to exceed its aggregate ratings limit when added to the firm's then-current backlog of uncompleted work.

The undisputed record here reflects that ML's electrical subcontractor's DPMC form was dated December 18, 2024, nearly six months (precisely 174 days) before the adjourned bid opening date of June 10, 2025. By comparison, Benard's DPMC form (which reported the status of its own outstanding contracts

and not that of any subcontractor) was dated May 6, 2025, thirty-five days before the bid opening date. Meanwhile, Vanas submitted separate DPMC forms for three subcontractors, respectively dated nine, seven, and five days before the bid opening date.

With respect to ML, we agree with the Board and the trial court that the over five-months stale timing of its DPMC form gave the Board adequate grounds to deem it non-responsive. The form is manifestly designed to inform the procurement agency at the time of bid opening that the bidder and its subcontractors are not over-committed to other work that may make it infeasible to perform the subject contract. To be sure, the status of that information can change from day-to-day when the bidder completes existing work or enters into new commitments. However, the agency has a reasonable interest in knowing "where things stood" at the time, or within a short period before, the bid opening date.

As Treasury's comments in the New Jersey Register indicate, the process is enhanced by the agency requiring the bidder to submit updated status information between the time of bid opening and the date of the contract award. If, during that interval, the bidder has taken on an excessive amount of new work that could hinder its ability to perform the subject contract, the agency can take

22

appropriate measures, including a rejection of the bid and possibly awarding the work to a different bidder or rebidding the contract. See Marvec Constr. Corp. v. Twp. of Belleville, 254 N.J. Super. 282, 292 (1992) (exemplifying "a situation where the rejection of all bids is justified and valid").

We reject ML's argument that the December 2024 date on its DPMC form was not material and that ML was entitled to cure the defect after the bid opening. The 2016 amendment to the regulation did not eliminate the need to submit a timely certification, even though the computed current sums can be supplied to the State post-bid opening. N.J.A.C. 17:19-2.13 emphasizes that a bidder's aggregate rating is to be determined by the bidder's "most recent approved invoice" received "before or on the date of the bid." (Emphasis added).

Moreover, insofar as ML construes Treasury's comments in the New Jersey Register to signal an alleged tolerance for stale information on the DPMC form when it is used in State contracting, the Board, as a local board of education governed by its own procurement statute, has the prerogative to be more stringent. The Board explicitly included in its solicitation of bids that all potential bidders were to include "DPMC Form 701 (or [an]other certified form indicating amount of uncompleted contracts of the date of the bid opening)." This language is attributable to the Board and the Board alone. It is indicative

23

of the fact that the Board intended to craft the requirements of its solicitation of bids to fit its own specific needs rather than adopt the DPMC's approach precisely. A local board of education can choose to be more stringent than the State Treasury when the latter is awarding State contracts. School Board procurements are governed by their own discrete statutory scheme. See N.J.S.A. 18A:18A-4.

By contrast, the Board did not act arbitrarily or capriciously in determining the dates on Vanas's subcontractors' three DPMC forms to be compliant with the bid specifications. The range of five to nine days collectively reflected on those forms was reasonably deemed to be not comparable to ML's time lag of nearly six months.

The 35-day lag reflected on Benard's DPMC form presents a closer question. At oral argument before us, Vanas and the Board have suggested that the DPMC form's reference to a bidder's current invoices may correspond with a one-month (i.e., 30-day) billing cycle that may be customary in the business world, and therefore Benard's 35-day-old form was not sufficiently recent. We have been pointed to no legislative or regulatory history to support that conjecture, nor any language in the Board's bidding instructions to substantiate the claim. In any event, we decline to resolve whether Benard's DPMC form

was compliant because, as we will discuss in Part IV of this opinion, Benard's bid bond was materially defective.

## IV.

We next focus on what we regard as the dispositive reason the Board rejected Benard's bid, i.e., the date of its bid bond.[4]

In part two of its bidding instructions outlining the "Bidding Procedures" governing its solicitation of bids, the Board specified in Part 2(B)(2) that bidders are required to submit:

> The bid guarantee in the form of Bid Bond in accordance with N.J.S.A. 18A:18A-24, written by a Surety authorized to do business in the State of New Jersey in a dollar amount not less than 10% of the bid sum, (not to exceed $20,000.00).  The Bid Bond shall bear the same date as the Form of Proposal.  A certified check or cashiers check made payable to the "Edison Township Board of Education" in the same amount is also acceptable.
>
> [(Emphasis added).]

In Part 2(B)(3), the Board additionally conveyed to bidders that:

> The bidder shall submit with their bid an unconditional Certificate of Surety from the Bidders Surety Company

---

[4]  We recognize that the Board rejected the bids of ML and Benard because of an additional reason:  a failure to have their bids submissions notarized.  We agree with the trial court that the bid forms contain merely a signature line for an attestation and do not indicate a spot for notarization.  Hence, we do not rely on lack of notarization as proper grounds for rejection.

pursuant to N.J.S.A. 18A:18A-25 stating that it will provide the Contractor, if awarded a contract for the Project, with a bond representing 100% of the Contract Sum for the faithful performance of all provisions relating to the performance of the Contract. Submission of a Consent of Surety which contains any prior conditions upon the Surety's issuance of the required Bonds may be cause for rejection of the Bid.

In its oral opinion, the trial court determined that Benard's bid bond and consent of surety, both dated May 13, 2025 (approximately one month before the bid opening date of June 10, 2025), created a risk that Benard might do something that negatively affected the documents' enforceability in between the time that the bid bond and the consent of surety were dated and Benard's ultimate submission of its bid. The court further opined that this risk was "the very reason the bidding specifications require up-to-date documents[, providing] enforceability and assurance so the [B]oard can be as certain as humanly possible as of the bid opening that the surety stands behind the bid and will issue the required performance bond." (Emphasis added).

We are satisfied the trial court reasonably determined the Board had not acted arbitrarily and capriciously when it rejected Benard's bid for the material and non-waivable defect of having dated its bid bond May 13, 2025, more than a month before the bid opening date of June 10, 2025. As we noted above, in its instructions to bidders, the Board made explicitly clear that any bid bond

submitted was to "bear the <u>same date</u> as the Form of Proposal." (Emphasis added).

The difference of over one month as to this particular requirement was manifestly material, because, during that interval, the Board issued on May 30, 2025 Addendum #4, which materially altered the scope of work and readily could affect the associated costs. The bonding company that had been willing to ensure the bid on May 13 may well have refused to bond the project in light of that significant intervening Addendum. The Board therefore did not act arbitrarily or unreasonably given the sequence of events and circumstances.[5]

V.

Lastly, we have considered the arguments made by ML and Benard in attempting to invalidate Vanas's bid on the grounds that Vanas's bid was significantly higher than their own comparatively lower bids. We discern no merit to these arguments. To be sure, we are mindful that Vanas was the third lowest bidder and that there is a cost differential of more than $600,000 between its bid and the lowest bid by Benard. Even so, the Board, as the procurement agency entrusted with the statutory authority to make the contract award under

---

[5]  Because the bid instructions are not equally explicit as to the date of the consent of surety, we decline to rest our analysis on that discrete basis for rejection.

N.J.S.A. 18A:18A-4—and which ultimately is the governmental body accountable to local taxpayers—is presumed to be cognizant of those fiscal implications.

## VI.

For the foregoing reasons, we affirm the trial court's decision, albeit on slightly more limited grounds than those it articulated. N.J. Div. of Child Prot. and Permanency v. K.M., 444 N.J. Super. 325, 334 (2016) (quoting State v. Adubato, 420 N.J. Super. 167, 176 (App. Div. 2011), certif. denied, 209 N.J. 430, 37 (2012)). We need not and do not reach any other issues.

Because we have decided these expedited appeals on the merits with finality, and there is no reason to remand this case for a responsiveness hearing or any further proceedings or discovery, we modify the trial court's decision to be the permanent (not just preliminary) denial of injunctive relief. The contract award to Vanas is accordingly affirmed. The emergent stay we issued pending appeal shall automatically dissolve within three business days of this opinion, unless one or both appellants file an emergent application with the Supreme Court within that time frame.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division

A-0179-25